Emmett HARRIS, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

May 12, 1972.

**292**

L. Vincent Ramunno, Wilmington, for defendant below, appellant.

H. Newton White, Deputy Atty. Gen., Georgetown, for plaintiff below, appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

The defendant appeals from his conviction and sentence of life imprisonment on the charge of rape.

The complaining witness testified that she was picking berries in a field near her home when she was approached by the defendant; that he "dragged" her into an adjacent cornfield, despite her screams and struggles, and there "raped" her. The defense was consent.

The appeal is based upon several grounds:

**I.**

The defendant contends that there was insufficient evidence to support the conviction.

The complaining witness, 14 years of age, testified in detail as to her efforts to avoid the intercourse: that she attempted to flee the scene and, in so doing, cut her finger on the barbed wire fence; that when she screamed the defendant threatened to "knock her out"; that he stuffed a handkerchief in her mouth; that he held her arms and legs down forcibly despite her continued struggles. The prosecutrix further testified that, after the act, the defendant said "You know what I have to do now", and threatened her with his fist, making her believe that he intended to kill her. The frame of mind of the prosecutrix was corroborated by two witnesses who found her in a lake adjacent to the field, crying for help, and appearing to be hysterically fearful.

■ We hold that such evidence was sufficient to support the conviction. The jury acted well within its province in accepting the testimony of the prosecutrix and in rejecting the defense of consent based mainly upon the absence of physical evidence of force and violence on the body of the prosecutrix.

We find no merit in this contention.

**II.**

The defendant contends that a former Public Defender for Sussex County (now superseded by employed counsel) was so incompetent as trial attorney as to be "inherently ineffective" in his representation of the defendant; that, therefore, he was deprived of the effective assistance of counsel in violation of his constitutional rights.

Specifically, the defendant charges that the trial attorney: (1) conferred with him only once, for about 20 minutes, during the several months he was in custody prior to trial; (2) was so unfamiliar with his client as not to recognize him in the courtroom; (3) interviewed witnesses by telephone only; (4) failed to investigate the reputation of prosecutrix; (5) failed to study medical reports showing that prosecutrix was "non virginal" and that the sperm found in her immediately after this incident was dead, thus indicating that it was 48 hours old or sterile; (6) failed to pursue the defense of the prosecutrix' promiscuity and consent by showing that defendant was the father of four children and not sterile; (7) failed to request any voir dire of jurors, especially as to racial bias and prejudice; (8) made no opening statement

at any time during the trial; (9) made no request for instructions and no objection to the charge; (10) made no objection or appropriate motion when the Trial Judge inadvertently stated to the jury that the defendant had pleaded guilty to the charge.

■ The issue of competency and effectiveness of trial counsel has not been heretofore raised in this case. There has been no evidentiary hearing on the matter; factual issues are involved; and counsel must have the opportunity to be heard and to defend himself against the charge. For these reasons, we decline to consider the question of ineffective trial counsel raised for the first time on this direct appeal.

The defendant may pursue the charge of ineffective trial counsel in a post-conviction proceeding in the Superior Court; there an evidentiary hearing may be had and specific findings as to each charge of incompetency may be made, subject to further review by this Court. See O'Connor v. Warden, Maryland Penitentiary, 6 Md. App. 590, 253 A.2d 434, 437 (1969); Anno. 74 A.L.R.2d 1390.

■ For guidance in any further proceeding as to this facet of the case, we take the occasion to state that we approve the Maryland test for constitutional incompetency of trial counsel: whether under all of the circumstances of the particular case, trial counsel was so incompetent that the accused was not afforded genuine and effective legal representation. Green v. Warden, Maryland House of Correction, 3 Md.App. 266, 238 A.2d 920, 922 (1968). We do not approve the older test that incompetence violative of constitutional rights exists only when the "attorney's representation is so lacking that the trial has become a farce and a mockery of justice." See Annotation: 74 A.L.R.2d

1394, 1397; United States ex rel. Darcy v. Handy (3 Cir.) 203 F.2d 407 (1953).

Accordingly, we decline to rule upon the constitutional issue of incompetency of trial counsel on this appeal.

### III.

The defendant contends that the Trial Court committed prejudicial error in that the Court: (1) limited juror voir dire questions to the inquiry whether any person had communicated with, or any lawyer in the case had represented, the prospective jurors; (2) made a "suggestion" to the impaneled jury not to "try to seek any [outside] information" about the case— rather than to "instruct" or "direct" the jury along these lines; (3) permitted the prosecutrix to use the conclusionary term "rape" in her testimony; (4) permitted the Attorney General to ask prejudicial and misleading questions; and (5) instructed the jury inadvertently (but immediately corrected) that the defendant had pleaded "guilty" to the charge.

■ Upon due consideration of these points, we have concluded that they do not constitute error sufficient to warrant reversal of this conviction. Defense counsel made no objection to any of the errors here asserted. Further consideration of these matters, and the consequences upon the issue of ineffective counsel, may be had in a post-conviction proceeding upon that issue.

### IV.

The jury returned a unanimous verdict of guilty of rape as charged, but announced it was unable to agree as to a recommendation of mercy. The Trial Judge concluded that this was tantamount to no recommendation of mercy and, accordingly, imposed a life sentence pursuant to the Statute.[1]

---

1. 11 Del.C. § 781 provides:
   "Whoever commits the crime of rape;
   * * *
      *    *    *    *
   "Shall be guilty of felony and shall suffer life imprisonment. If the jury at the time of rendering their verdict recommends the defendant to mercy, the court may impose a sentence for any period not less than 3 years, instead of life imprisonment."

The defendant contends that the jury failed to return any one of the four possible verdicts outlined in the instructions, that the verdict was incomplete, that no legal verdict was returned, and that a new trial is impelled.

The jury was instructed that it could return one of the following alternative verdicts: (1) guilty of rape as charged without a recommendation of mercy; (2) guilty of rape as charged with a recommendation of mercy; (3) guilty of assault only; or (4) not guilty.

■ We hold that the verdict returned in this case conformed to the first alternative. We agree with the Trial Judge that the jury's inability to reach a unanimous verdict as to the recommendation of mercy was tantamount to no recommendation of mercy under § 781. The verdict of guilty of rape as charged was complete and valid, without more.

The latter question is not without difficulty. Statutes vary widely in this area of the law; and the prevailing construction of the various statutes makes the jury's decision on remission of punishment a constituent part of the verdict, requiring unanimous jury action one way or the other on that issue, along with a verdict of guilt. See concurring opinion of Justice Frankfurter in Andres v. United States, 333 U.S. 740, 68 S.Ct. 880, 886, 92 L.Ed. 1055 (1948).

But our "mercy" statutes [2] are unique. It appears that only New Mexico and Utah have similar statutes providing that a recommendation of mercy is not binding upon the trial judge. Moreover, § 781 explicitly differentiates the recommendation from the verdict by permitting the jury to make the recommendation "at the time of ren-

dering their verdict". The recommendation does not become a constituent part of the verdict under § 781; it is in the nature of a supplement to the verdict. Our Statute is to be distinguished thereby from various other statutes reflected in the cases with which our ruling, at first impression, may seem to be in conflict. For example, in *Andres* the federal statute provided that the jury "may qualify their verdict" by adding thereto "without capital punishment"; and the Massachusetts statute provided that the death penalty would be imposed for first degree murder "unless the jury shall by their verdict, and as a part thereof" recommend "that the death sentence be not imposed", Commonwealth v. Stewart, Mass., 270 N.E.2d 811 (1971). It is to be noted that such statutes build the recommendation into the verdict itself. See also Mills v. State 74 Tex.Cr. R. 137, 168 S.W. 88 (1914); People v. Hicks, 287 N.Y. 165, 38 N.E.2d 482 (1941); People v. Hall, 199 Cal. 451, 249 P. 859 (1926). Not so under § 781.

■ We hold, therefore, that, under § 781, a verdict of guilt, without more, carries the penalty provided by law, unless the jury "recommends the defendant to mercy" as a permissible supplement to the verdict. Since, under our law, a jury may only act unanimously, such supplement to the verdict cannot be made by the jury unless there is unanimity. Compare State v. Bunk, 4 N.J. 461, 73 A.2d 249 (1950); Commonwealth v. McNeil, 328 Mass. 436, 104 N.E.2d 153 (1952).

As indicated in *Andres*, the authorities reaching a contrary result under the various statutes emphasize that it is unfair and unjust, and inconsistent with the humanitarian purpose of such statutes, to permit one juror to "hang" the jury on the question of whether there shall be a recommen-

---

2.  For capital cases, 11 Del.C. § 3901, like § 781, provides:

    "§ 3901. Recommendation of mercy

    "In all cases where the penalty for crimes prescribed by the laws of this State is death, if the jury, at the time of render-

ing their verdict, recommends the defendant to the mercy of the Court, the Court may, if it seems proper to do so, impose the sentence of life imprisonment instead of death."

dation of mercy and thereby decide the degree of punishment to be imposed. The merits of that view are for the consideration of the General Assembly. We have construed § 781 in accord with its terms and with long-established practice in this State thereunder. Legislative action will be necessary if that construction and that practice are to be changed.

Affirmed.