**Mary Lucia SANCHEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 906–99.**

Court of Criminal Appeals of Texas,
En Banc.

June 21, 2000.

Allan Fishburn, Dallas, for appellant.

Michael J. Sandlin, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MANSFIELD, J., delivered the opinion of the Court, in which MEYERS, PRICE, HOLLAND, WOMACK, and JOHNSON, JJ., joined.

The question presented is whether the Fifth Court of Appeals erred in holding

that the trial court erred in its instructions to the jury at the punishment stage of trial. We hold that the Court of Appeals did not err.

### The Relevant Facts

A Dallas County grand jury indicted appellant, Mary Lucia Sanchez, for the murder of Judy Lynn Green. See Tex. Pen.Code § 19.02(b)(1) & (2). The case went to trial before a jury. At the guilt/innocence stage of trial, the State presented evidence that on the evening of October 2, 1996, appellant shot and killed Green, her former lover, in Green's home in Dallas. The State's evidence included a written statement appellant gave to police shortly after the shooting. In the statement, appellant admitted shooting Green but claimed she did so only after Green attacked her:

> She ... had me by the neck. I felt stinging, I thought, from her rings or fingernails. I got mad because she was being cruel. I reached out and got the gun [which Green kept on a night stand]. I pushed her toward the door and I just shot. She came at me and we fought over the gun. It went off and I felt a burning sensation in my leg.[1] I was so mad, I started pulling the trigger.

Appellant took the witness stand in her defense and testified that she shot Green because she believed Green was trying to kill her. The jury rejected appellant's claim of self-defense and found her guilty of murder, as charged in the indictment.

At the punishment stage of trial, appellant attempted to prove that she shot Green under the immediate influence of sudden passion arising from an adequate cause, which would reduce her offense from a first-degree felony to a second-degree felony[2] and reduce the range of punishment.[3] Appellant's evidence included the testimony of a clinical psychologist, who testified that she examined appellant and that, in her professional opinion, appellant "was just overwhelmed by her emotions" at the time she shot Green.

The trial court instructed the jurors that they could find in appellant's favor on the issue of sudden passion only if they were unanimous, and that otherwise they would have to find against appellant on the issue. After deliberating, the jurors assessed appellant's punishment at imprisonment for twenty-five years, a punishment beyond the maximum allowed for a second-degree felony. See footnote three, *supra*. When asked by the trial court whether their decision was unanimous, the jurors answered that it was not. Three jurors wanted to find in appellant's favor on the issue of sudden passion, but because of the trial court's instructions, they had to find against appellant on the issue.

On direct appeal, appellant argued, for the first time, that the trial court fundamentally erred in its instructions to the jury on the issue of sudden passion. Appellant argued that the trial court's instructions allowed the jury to return a non-unanimous decision adverse to her, and that Texas Constitution article V, § 13, requires that jury decisions adverse

---

1. The State's evidence also established that, at the time in question, appellant was shot in her left thigh.

2. Texas Penal Code § 19.02, the penal provision applicable to this case, provides in relevant part:
   (c) Except as provided in Subsection (d), an offense under this section is a felony of the first degree.
   (d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

3. Texas Penal Code § 12.32 provides that punishment for a first-degree felony is imprisonment for five to 99 years or life, plus a fine of up to $10,000. Texas Penal Code § 12.33 provides that punishment for a second-degree felony is imprisonment for two to twenty years, plus a fine of up to $10,000.

to a defendant be unanimous. See *Molandes v. State*, 571 S.W.2d 3, 4 (Tex.Crim. App.1978). Appellant also argued that the trial court's error caused her egregious harm, "demonstrated by the fact that the jury assessed 25 years where the statutory maximum for a second-degree felony is 20 years."

The Fifth Court of Appeals agreed with appellant that the trial court fundamentally erred in its punishment charge, but the Court of Appeals did not reach appellant's constitutional claim, preferring instead to decide the point of error on the basis of Article 37.07, § 3(c), of the Texas Code of Criminal Procedure:

> Article 37.07 [§ 3(c) ] provides that:
>
> In cases where the matter of punishment is referred to the jury, the verdict shall not be complete until the jury has rendered a verdict on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty. *In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, and no jeopardy shall attach.*
>
> ( [E]mphasis added.) Thus, by its express language, section [sic] 37.07 requires the jury to "agree" on punishment. To "agree" on punishment means a unanimous vote. The special issue on sudden passion determines the applicable punishment range. We discern no significant distinction between "punishment" and "punishment range." Thus, we conclude that if the jury's answer is not unanimous on the issue of sudden passion, the jury has not "agreed" on punishment. To allow a charge such as the one given in this case would, in theory, allow a *single* juror to determine the range of punishment. We conclude that such a proposition is without any basis in law.

*Sanchez v. State*, No. 05–97–01389, slip. op. at 12–14, 1999 WL 173986 (Tex.App.—Dallas 1999) (not designated for publication) (emphasis in original; citations and some punctuation omitted). Having determined that the trial court's charge on punishment was erroneous, the Court of Appeals went on to hold that the error caused appellant egregious harm, requiring reversal of the trial court's judgment with respect to punishment and a new punishment hearing. *Ibid.* See *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985); Tex.Code Crim. Proc. art. 44.29(b).

We subsequently granted the State's petition for discretionary review to determine whether the Court of Appeals erred in concluding that the trial court erred in its punishment charge. See Tex.R.App. Proc. 66.3(b). In its brief to this Court, the State argues that Article 37.07, § 3(c), requires jury unanimity with respect to the "amount of punishment" ultimately assessed, but not with respect to the jury's preliminary vote on the issue of sudden passion.

### Analysis

The trial court's punishment charge allowed the jury to return a non-unanimous decision adverse to appellant on the issue of sudden passion. We must determine whether allowing the jury to do that conflicted with Article 37.07, § 3(c).

Article 37.07, § 3(c), which became effective January 1, 1966, requires the jury to "agree," *i.e.*, agree unanimously, on "the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty." If the jury does not agree unanimously, then the trial court must declare a mistrial. See *Henderson v. State*, 593 S.W.2d 954, 956 (Tex.Crim.App.1980); *Stanton v. State*, 535 S.W.2d 182, 183 (Tex.Crim.App.1976); *Brown v. State*, 508 S.W.2d 91, 93 (Tex. Crim.App.1974); see also Tex.Code Crim. Proc. art. 36.29(a) (requiring jury unanimity on all felony verdicts). The evident purpose of the statute is to ensure that thorough jury deliberation does not cease once a simple majority is achieved, thereby increasing the reliability of the verdicts

ultimately reached. See *United States v. Lopez*, 581 F.2d 1338, 1341 (9th Cir.1978).

Before September 1, 1994, the existence of sudden passion was an element of the offense of voluntary manslaughter (a lesser-included offense of murder), to be determined by the jury at the guilt/innocence stage. See *Bradley v. State*, 688 S.W.2d 847, 849 (Tex.Crim.App.1985) (plurality op.). Effective September 1, 1994, the existence of sudden passion became a punishment stage issue. See footnote two, *supra*. Article 37.07, § 3(c), however, was left unchanged in 1994, and it is now unclear whether that statute applies to a jury's preliminary vote on sudden passion.

When we interpret statutes, we seek always to effectuate the collective legislative intent or purpose. *Boykin v. State*, 818 S.W.2d 782, 785–786 (Tex.Crim. App.1991). When we interpret ambiguous statutes like Article 37.07, § 3(c), we may, in seeking a proper interpretation, consider extratextual factors. *Ibid*. Consideration of two such factors leads us to conclude that Article 37.07, § 3(c), requires unanimity with respect to the jury's preliminary vote on sudden passion.

First, we think the evident purpose of the statute—to increase the reliability of jury verdicts—is best achieved if the statute is interpreted to apply to the jury's preliminary vote on sudden passion. If the statute were interpreted not to apply, then a situation could arise in which, as in the instant case, the range of punishment is determined by less (perhaps much less) than all the jurors. In such a situation, the reliability of the punishment verdict would tend to be decreased, rather than increased, and that would be at odds with the evident purpose of the statute. Second, we think that if the Legislature intended to exempt the jury's decision on the sudden passion issue from the statutory unanimity requirement, it would have stated its intention expressly.

In summary, we agree with the Fifth Court of Appeals that the trial court erred in its punishment charge. We affirm the judgment of the Court of Appeals.[4]

McCORMICK, P.J. filed a concurring opinion.

KELLER, J., filed a concurring opinion, in which KEASLER, J., joined.

McCORMICK, Presiding Judge, concurring.

I concur only in the Court's judgment. The issue in this case is whether the trial court erred in instructing the jury at the punishment phase that, if it was split or nonunanimous on the sudden passion issue, then it had to find against appellant on the issue. The Court's decision rests on an interpretation of Article 37.07, Section 3(c), V.A.C.C.P., when it should rest on an interpretation of Section 19.02(d), Texas Penal Code. Article 37.07, Section 3(c), has nothing to do with this case.

The Court decides that Article 37.07, Section 3(c), should be "interpreted to apply to the jury's preliminary vote on sudden passion" under Section 19.02(d). Section 19.02(d), however, says nothing about a "preliminary vote" on sudden passion for purposes of Article 37.07, Section 3(c). Section 19.02(d) actually says that a defendant must prove the sudden passion issue at the punishment phase of trial.

The "plain" language of Article 37.07, Section 3(c), also does not support the Court's decision in this case. Article 37.07, Section 3(c), says what happens when "the jury shall fail to agree" on the "amount of punishment." It says nothing about what happens when the jury shall fail to agree on the sudden passion issue or the "punishment range."

The problem here is not that the jury was split or nonunanimous on the "amount

---

4. We note that, because the error of which appellant complains affected just the punishment phase of her trial, she is entitled only to a new punishment hearing. See Tex.Code Crim. Proc. art. 44.29(b).

of punishment" which is the problem addressed by Article 37.07, Section 3(c). The jury unanimously agreed on the amount of appellant's punishment as required by the "plain" language of Article 37.07, Section 3(c). Equating "punishment" with "punishment range," as the Court's opinion does here, is inconsistent with the "plain" language of Article 37.07, Section 3(c). And, the Court apparently recognizes this since it concludes that Article 37.07, Section 3(c), is ambiguous, which it is not, and then resorts to extratextual considerations to say that Article 37.07, Section 3(c), also applies when a jury is split on the sudden passion issue.

Before the Legislature added Section 19.02(d), the prosecution had to disprove the sudden passion issue at guilt/innocence if the issue was raised by the evidence. And, if, as here, a jury was split or non-unanimous on the sudden passion issue, the jury could not nor was it instructed that it should find against the defendant on the sudden passion issue.

It is clear that the Legislature by adding Section 19.02(d) intended to change former law only to the extent of putting the burden on the defendant to prove the sudden passion issue at the punishment phase. The Legislature clearly did not intend to change former law by authorizing or requiring a jury to find against a defendant on the sudden passion issue if the jury was nonunanimous or split on the issue.

It is not Article 37.07, Section 3(c), that supports this. It is a sensible and common-sense interpretation of Section 19.02(d) that supports this. This interpretation of Section 19.02(d) is based on former law, the circumstances under which the Legislature enacted Section 19.02(d), together with a consideration of its history and purpose. See Tex. Gov't Cd., Section 311.023(1), (2), (3), and (4).

Since the Court does rely on extratextual considerations and in particular some consequences of deciding this case otherwise, then it should also consider some other consequences of deciding this case

under Article 37.07, Section 3(c). By deciding this case under Article 37.07, Section 3(c), the Court's opinion would require a trial court to declare a mistrial as to the entire case when a jury is split on the sudden passion issue at the punishment phase. See Article 37.07, Section 3(c)(requiring trial court to declare mistrial if "the jury shall fail to agree"). On the other hand, an appellate court may remand an identical case for only a new punishment hearing if a trial court does what the trial court did in this case and lets an appellate court grant relief on appeal. See Article 44.29(b), V.A.C.C.P.

It is doubtful that the Legislature intended for these things to happen when it added Section 19.02(d). See Texas Government Code, Section 311.023(5) (in construing ambiguous or nonambiguous statute, courts should consider consequences of a particular construction). It is more likely that the Legislature by adding Section 19.02(d) intended the same consequences that existed under former law when the jury is split on the sudden passion issue which is a mistrial only as to the phase of the trial affected by the jury's split. Under former law, it was a mistrial as to guilt/innocence. Under current law, it should be a mistrial as to punishment only.

Deciding this case under Article 37.07, Section 3(c), results in an undeserved windfall to guilty criminal defendants. Echoing the terminology of the various opinions filed in this case, if the Legislature intended for this to happen, then surely it would have expressly said so.

With these comments, I concur only in the Court's judgment.

KELLER, J., delivered a concurring opinion in which KEASLER, J. joined.

At the punishment stage of trial, the trial court instructed the jury that "[a]n affirmative ('yes') answer on the issue [of sudden passion] submitted must be unanimous, but if the jury is not unanimous in

reaching an affirmative answer, then the issue must be answered 'no.'"[1] In essence, the jury instruction required a unanimous vote in appellant's favor on the sudden passion issue but did not require a unanimous vote adverse to appellant on that issue. Appellant claims that the jury was required to deliver a unanimous vote on the issue adverse to her before a conviction of first degree murder (and the range of punishment for that offense) would be authorized. The Court agrees, holding that a unanimous vote adverse to appellant was required by statute. I agree with the Court's holding, but I believe that more explanation should be given on why such a unanimous vote was required.

In interpreting Texas Code of Criminal Procedure, Article 37.07 § 3(c), I resort to the traditional rules of statutory construction. Texas appellate courts interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results.[2] When the language is ambiguous, we may look to extratextual factors to interpret a statute. *Id.* In construing an ambiguous statute, we may consider, among other matters, the following: (1) the object sought to be attained, (2) circumstances under which the statute was enacted, (3) any legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.[3]

In this case, the language of Article 37.07 § 3(c) is ambiguous. The statute calls for a unanimous verdict on guilt and "the amount of punishment."[4] What is unclear is whether this language embraces statutory punishment issues that are preliminary to assessing the amount of punishment.

The unanimity provision was enacted into the Code of Criminal Procedure in 1967. At that time, offenses were not categorized into degrees but simply carried ranges of punishment, and in some cases, if some fact were proven, the punishment range might be increased or decreased.[5] In the case of murder, the punishment range would be reduced to five years or less if the State failed to prove malice aforethought.[6] The 1973 Texas Penal Code changed that practice by setting up degrees of felonies and misdemeanors under which all Penal Code offenses would be categorized.

In searching cases involving the pre–1973 Penal Code, I can find none that address whether jury unanimity was required for a punishment issue. One explanation for this absence of relevant authority may be the fact that the bifurcated trial requirement was not imposed until 1965.[7] And at least for murder prosecutions, the issue of "malice"[8] was most often submitted in the guilt phase of trial by mutual consent as the separate offense "murder without malice"—despite the fact that mal-

1. *Sanchez v. State,* No. 05–97–01389–CR, slip op. at 12, 1999 WL 173986 (Tex.App.—Dallas, March 31, 1999)(unpublished)(bracketed material in Court of Appeals' opinion).

2. *Boykin v. State,* 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim.App.1991).

3. Tex. Gov't.Code, § 311.023; *Brown v. State,* 943 S.W.2d 35, 38 (Tex.Crim.App.1997).

4. *See* Article 37.07 § 3(c).

5. *See generally* Texas Penal Code of 1948 and supplements through 1967.

6. Texas Penal Code, Articles 1256 and 1257b (1948); *Mims v. State,* 3 S.W.3d 923, 926 (Tex.Crim.App.1999).

7. *Carver v. State,* 510 S.W.2d 349, 354 (Tex. Crim.App.1974); *see also Smith v. State,* 5 S.W.3d 673, 684 (Tex.Crim.App.1999)(Keller, J. concurring and dissenting).

8. All references to "malice" are intended by this opinion to refer to the concept of "malice aforethought" as that term was used in the pre–1973 Penal Code.

ice was in reality a punishment issue.[9] Even for cases that correctly submitted the issue of malice at punishment, the statute would appear to have required the jury to be instructed that, absent a finding of malice, the sentence assessed could not exceed five years.[10] Assuming the jury followed the trial court's instructions, a verdict in excess of five years could not be returned absent unanimous agreement that the defendant acted with malice.

At the same time the 1973 Penal Code was enacted, the Legislature also enacted Texas Code of Criminal Procedure, Article 37.071. In that Article, the Legislature set forth three punishment issues for capital cases and expressly provided that the jury must agree unanimously on answers adverse to the defendant but could answer the issues in the defendant's favor on ten votes or more.[11] The statute would later be amended to add the mitigation special issue, which, although a defensive issue of sorts, also requires a unanimous vote to answer the issue adversely to the defendant and a vote of ten or more to answer the issue in the defendant's favor.[12]

Despite the Legislature's express guidance with regard to capital cases in 1973, no changes were made at that time in Article 37.07, applying to noncapital cases. But there was only one provision in the 1973 Penal Code that purported to establish a punishment issue for noncapital cases, and that issue was in fact a defensive issue. Texas Penal Code § 15.04(d)

established an imperfect renunciation mitigating factor for inchoate offenses:

> Evidence that the defendant renounced his criminal objective by abandoning his criminal conduct, countermanding his solicitation, or withdrawing from the conspiracy before the criminal offense was committed and made substantial effort to prevent the commission of the object offense shall be admissible as mitigation at the hearing on punishment, if he has been found guilty of criminal attempt, criminal solicitation, or criminal conspiracy; and in the event of a finding of renunciation under this subsection, the punishment shall be one grade lower than that provided for the offense committed.[13]

Although commentators to the 1973 Penal Code have discussed this mitigating factor, they have been silent about whether jury unanimity on the issue is required.[14] Searcy and Patterson state that the mitigating factor "appears to resemble an affirmative defense" and the renouncing actor will probably have to prove the issue by a preponderance of the evidence.[15]

As with the issue of malice in the pre–1973 Penal Code, the "sudden passion"[16] issue in the 1973 Penal Code was structured in such a way that a unanimous jury finding adverse to the defendant on the issue was required to deprive the defendant of the benefit of that issue. The "sudden passion" issue was an element of the offense of voluntary manslaughter,[17] which we recognized to be a lesser includ-

9. *Carver,* 510 S.W.2d at 354.

10. *See* Texas Penal Code, Articles 1256 and 1257b (1948); *Mims,* 3 S.W.3d at 926.

11. Article 37.031(b) & (d) (1973).

12. Article 37.071 § 2(e) & (f)(1991). These provisions have remained unchanged to date except for renumbering (e) as (e)(1).

13. This provision has remained unchanged since 1973.

14. Seth S. Searcy, III and James R. Patterson, Vernon's Annotated Penal Code, § 15.04, *Practice Commentary* (1974); Branch's 3 rd

Edition, Texas Annotated Penal Statutes, § 15.04, *Explanatory Comment* (1974).

15. Searcy and Patterson, § 15.04, *Practice Commentary.*

16. All references to "sudden passion" are intended by this opinion to refer to "sudden passion arising from an adequate cause" as that phrase is used and defined in Texas Penal Code § 19.02(a) & (d) and its predecessors.

17. Texas Penal Code § 19.04 (1973).

ed offense of murder.[18] In *Cobarrubio v. State*, we held that, when the issue is raised by the evidence, a sudden passion instruction must be included in the portion of the jury charge that instructs on the offense of murder, so that the jury will be required to acquit the defendant of murder if it has a reasonable doubt about sudden passion.[19] Because the absence of sudden passion was considered to be an element of murder, the jury would necessarily be required to find unanimously that the defendant did not act under sudden passion in order to convict a defendant in a case where the existence of sudden passion was raised by the evidence. In a later decision, we recognized as a legitimate possibility that a hung jury might result from disagreement about the sudden passion issue.[20]

In 1993, the Legislature abolished the offense of voluntary manslaughter and made the sudden passion issue a punishment issue in murder cases.[21] The burden was placed upon the defendant to prove sudden passion by a preponderance of the evidence.[22] A review of the legislative history reveals no discussion about whether a unanimity rule applies to this new punishment issue. At the Senate hearings, Knox Fitzpatrick, then an assistant district attorney in Dallas County, characterized the statutory change as "a good cleanup."[23] "Second degree murder" was listed in a House Research Organization table of offenses by degree, but voluntary manslaughter was not listed on the HRO table

for deleted offenses.[24] While sparse, the legislative history does suggest that the Legislature still conceived of "sudden passion" homicide as a statutory offense, and in fact, a lesser-included offense of first-degree murder: the Legislature did not eliminate sudden passion homicide as an offense but changed allocations regarding the burden of proof and the method of presenting certain issues (i.e. in the punishment stage as opposed to the guilt stage of trial). The fact that the Legislature believed sudden passion murder would remain a lesser-included offense of first-degree murder is some evidence that the Legislature still intended for the unanimous verdict requirement to apply to the issue that distinguishes the two types of murder.

At any rate, absent a clear indication in the legislative history that the Legislature intended a dramatic change in unanimous verdict requirements for the offense of murder, we should be reluctant to infer from an ambiguous textual basis that the Legislature desired such a change.[25] We should be especially reluctant to make such non-obvious inferences when there appear to be other obvious explanations for the statutory changes involved.[26] We have already held in another context that the Legislature had two obvious purposes in the changes made to the sudden passion issue: "(1) to shift the burden of proof on the sudden passion issue to the defendant, and (2) to turn the issue into a punishment phase issue, thereby minimizing the effects

---

18. *Braudrick v. State*, 572 S.W.2d 709, 710–711 (Tex.Crim.App.1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979).

19. *Cobarrubio v. State*, 675 S.W.2d 749, 751–752 (Tex.Crim.App.1983), *overruled on other grounds by*, *Lawrence v. State*, 700 S.W.2d 208 (Tex.Crim.App.1985).

20. *Ruiz v. State*, 753 S.W.2d 681, 687 (Tex. Crim.App.1988).

21. *Compare* § 19.02(d) (current) and § 19.04(a)(1993); *see Mims*, 3 S.W.3d at 925.

22. *See* § 19.02(d).

23. Knox Fitzpatrick, Senate Criminal Justice Committee, SB 1067, April 14, 1993, Tape 2, Side 1.

24. House Research Organization Digest, Bill Analysis, May 6, 1993, *Table B: Person Offense Rankings*, p. 40 (bill analysis p. 11) and *Table D: Offense Sections Deleted from Penal Code*, p. 46 (bill analysis p. 17).

25. *Mims*, 3 S.W.3d at 927.

26. *Id.*

of reversible error that might occur in connection with the issue."[27] Stripping the unanimity requirement from the sudden passion issue is not an obvious purpose.

Further, a review of cases in other jurisdictions supports a unanimity requirement for findings adverse to the defendant on defensive punishment issues. There is currently no right to a jury trial at the punishment phase of a criminal trial in federal court.[28] However, in *Andres v. United States*, the Supreme Court held that, when a jury decision is required in federal court, the jury's decision must be unanimous: "In criminal cases this requirement of unanimity extends to *all issues—character or degree of the crime, guilt and punishment—which are left to the jury*."[29] In *Andres*, the defendant was tried for first degree murder.[30] Under the applicable statute, this crime was punishable by death unless the jury qualified its verdict by adding the phrase "without capital punishment"—in which case the sentence was life.[31] The jury was instructed that their verdict must be unanimous, and in response to a question about the qualified verdict, the trial judge issued special instructions, providing in relevant part as follows:

And, finally, you will recall I said that you are instructed that before you may return a qualified verdict of murder in the first degree without capital punishment, that your decision to do so must, like your regular verdict, be unanimous.[32]

The Supreme Court held that this instruction deprived the defendant of his right to a unanimous verdict adverse to him:

It seems to us, however, that where a jury is told first that their verdict must be unanimous, and later, in response to a question directed to the particular problem of qualified verdicts, that if their verdict is first degree murder and they desire to qualify it, they must be unanimous in so doing, the jury might reasonably conclude that, if they cannot all agree to grant mercy, the verdict of guilt must stand unqualified.[33]

A couple of states have addressed an analogous situation involving affirmative defenses. As with the sudden passion mitigation issue, a decision on an affirmative defense is not itself a decision on the final issue in the case (i.e. guilt). And in fact, the sudden passion issue acts much like an affirmative defense in the punishment phase: just as an affirmative defense admits the crime but seeks to avoid criminal liability by showing other facts that justify the conduct, the sudden passion issue admits that the crime has occurred but seeks to avoid the full impact of the punishment by proof of other facts that mitigate against the usual penalty.

In *State v. Miyashiro*, the jury asked the trial judge "is unanimity required in the decision of whether entrapment oc-

---

27. For example, under the current statute a trial court's erroneous refusal to admit evidence relevant to the sudden passion issue could result only in a new punishment hearing rather than an entire new trial.

28. *See* Fed.R.Crim.P. 32(c)(1).

29. *Andres v. United States*, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948)(emphasis added). In saying that all issues resolved by the jury must be resolved unanimously, the Supreme Court did not suggest that a jury must agree on every fact submitted to it for consideration. The Supreme Court draws a distinction between the "underlying brute facts" that make up an element (or a defense) and the legal elements of a crime (or defense). *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999); *see also Schad v. Arizona*, 501 U.S. 624, 631–632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

30. *Id.* at 741, 68 S.Ct. 880. The defendant was tried in United States District Court because Hawaii was a Territory at the time. *Id.*

31. *Id.* at 746, 68 S.Ct. 880.

32. *Id.* at 751, 68 S.Ct. 880.

33. *Id.* at 752, 68 S.Ct. 880; *see also id.* at 751, 68 S.Ct. 880.

curred?"[34] The trial court answered "yes," and the Intermediate Court of Appeals of Hawaii held that the trial court's answer misled the jurors into believing that failure to reach an agreement on the issue of entrapment would render the defense inapplicable and require a guilty verdict.[35] The Hawaii court found that such a conclusion by the jury would violate the defendant's right to a unanimous jury verdict;[36] the right to a unanimous jury verdict required that the jury unanimously reject the defendant's affirmative defense before returning a verdict of guilty: "if the jury unanimously agreed that the elements of a charged offense had been established by the prosecution beyond a reasonable doubt, but was unable to agree that the affirmative defense of entrapment had been established, by a preponderance of the evidence, as to the charged offense, no verdict could be reached."[37]

In *State v. Harris,* the Supreme Court of Rhode Island held that unanimity was required to find against the defendant on the insanity defense.[38] In *Harris,* the jury was instructed that a failure to agree on the insanity defense meant the defendant did not meet his burden of proof:

> Should, however, after weighing carefully all the evidence, you should find yourselves unconvinced of the truth of the defendant's plea, then the defendant must be deemed to have failed in his proof. In which event, the presumption of the defendant's sanity survives and your conclusion and finding of guilt under the first plea remains unchanged. Furthermore, if you should find that the evidence for and against the defendant's plea of insanity simply balances evenly,

*so that you cannot agree* on a finding, the defendant must again be held to have failed in his proof, and in this event also the presumption of the defendant's sanity survives, and, your original finding of guilt remains unchanged. Again, if after weighing the evidence carefully, *though you can't agree,* there should however still remain a doubt in your minds about the defendant's sanity, then you must find that the defendant's plea has failed again. In which event, the presumption of his sanity survives and must prevail, and your finding of guilty under the first plea still stands. If accordingly you find that the defendant's plea of insanity has failed of sufficient proof and *that you cannot agree or that you cannot agree* upon a finding or that all you have about it is a doubt and that, as the law requires, the presumption of his sanity survives and prevails, you will thereupon return to the Court as your verdict a finding you have made under the first plea.[39]

The Supreme Court of Rhode Island quoted *Andres* for the proposition that all issues decided by a jury must be decided unanimously.[40] Although Rhode Island law placed the burden upon the defendant to prove insanity, the Rhode Island court stated that "there is a vast difference between an instruction as to the persuasiveness of evidence and an instruction as to agreement. If the jury could not agree upon defendant's sanity then no verdict could be reached."[41]

In *Harris v. State,* the Supreme Court of Delaware addressed whether unanimity was required for a jury finding of mercy under Delaware's punishment scheme.[42]

**34.** *State v. Miyashiro,* 90 Hawai'i 489, 979 P.2d 85, 92 (1999).

**35.** *Id.* at 97.

**36.** *Id.* at 94–95.

**37.** *Id.* at 97.

**38.** *State v. Harris,* 89 R.I. 202, 152 A.2d 106 (1959).

**39.** *Id.* at 109 (emphasis in *Harris* ).

**40.** *Id.*

**41.** *Id.*

**42.** *Harris v. State,* 293 A.2d 291 (Del.1972).

The defendant in *Harris* was convicted of the crime of rape. Delaware law provided that rape would be punished as follows:

> Whoever commits the crime of rape;
>
> . . .
>
> Shall be guilty of felony and shall suffer life imprisonment. If the jury at the time of rendering their verdict recommends the defendant to mercy, the court may impose a sentence for any period not less than 3 years, instead of life imprisonment.[43]

The jury unanimously delivered a verdict of guilt, but was unable to agree as to a recommendation of mercy.[44] The trial judge concluded that the jury's failure to agree was tantamount to no recommendation of mercy and imposed a life sentence.[45] The defendant argued that the verdict was incomplete, and a new trial was required, because of the jury's failure to agree on the recommendation of mercy.[46]

The Supreme Court of Delaware affirmed the conviction. The court observed that "the prevailing construction of the various statutes makes the jury's decision on remission of punishment a constituent part of the verdict, requiring unanimous jury action one way or the other on that issue, along with a verdict of guilt."[47] The Delaware court, however, opined that Delaware's "mercy" statutes were unique,[48] and were exempt from the prevailing view because (1) the jury's recommendation of mercy was not binding upon the trial judge, and (2) the statutory language explicitly differentiated the recommendation from the verdict by permitting the jury to

make the recommendation "at the time of rendering their verdict."[49] For these reasons, the court held that the mercy recommendation was a supplement to the verdict rather than a constituent part of the verdict.[50] Because the mercy recommendation was a supplement to the verdict, the jury's failure to agree on the mercy recommendation did not disrupt their unanimous verdict of guilty.[51]

Unlike the mercy statutes in Delaware, the sudden passion issue in Texas is a constituent part of the punishment verdict. In this regard, the sudden passion issue shares more in common with the affirmative defense statutes discussed by the Hawaii and Rhode Island courts, and with the punishment statute discussed by the Supreme Court in *Andres*.

Finally, when a statute is ambiguous, we should interpret it to avoid serious constitutional concerns.[52] Although the United States Constitution does not impose a unanimous verdict requirement upon the states (at least for twelve person juries),[53] the Texas Constitution does impose a unanimous verdict requirement for felony cases.[54] Whether permitting a non-unanimous verdict on the sudden passion issue would contravene that requirement is an issue we need not consider if we construe the statute to require unanimity. Given the ambiguity of the statutory language and support for unanimity in the legislative history and in caselaw from other jurisdictions, we have more than enough reason to construe the unanimity clause of Article 37.07 § 3(c) as embracing the sudden passion issue.

**43.** *Id.* at 293 n. 1 (quoting 11 Del. C. § 781).

**44.** *Id.* at 293.

**45.** *Id.*

**46.** *Id.* at 294.

**47.** *Id.*

**48.** *Id.*

**49.** *Id.*

**50.** *Id.*

**51.** *Id.*

**52.** *State v. Edmond*, 933 S.W.2d 120, 124 (Tex.Crim.App.1996).

**53.** *Johnson v. Louisiana*, 406 U.S. 356, 359–363, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)

**54.** Texas Constitution, Article V § 13.

With these comments, I concur in the Court's judgment.