In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-09-00081-CR


____________________




RODNEY CAMERON STRICKLAND, Appellant




V.




THE STATE OF TEXAS, Appellee







On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CR26358






 MEMORANDUM OPINION


 A jury found Rodney Cameron Strickland guilty of the murder of his wife Mary and
assessed his punishment at sixty years of confinement in the Texas Department of Criminal
Justice-Correctional Institutions Division and a $10,000 fine. In two appellate issues,
Strickland challenges the legal sufficiency of the evidence and he also contends that he
suffered egregious harm in the punishment phase because the trial court's instruction on
sudden passion did not require a unanimous verdict. We affirm the judgment.

Legal Sufficiency Issue


Standard of Review


 Strickland presents his first issue as one of legal sufficiency. At trial, Strickland
admitted that he shot his wife and caused her death, but disputed that he possessed the
requisite intent necessary to be proven guilty of having committed Mary's murder. With
respect to the legal sufficiency of the evidence in a criminal case, we review all of the
evidence in a light most favorable to the verdict, and we decide if any rational trier of fact
could find the essential elements of the crime beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004). A person commits an offense if he: (1)
intentionally or knowingly causes the death of an individual; (2) intends to cause serious
bodily injury and commits an act clearly dangerous to human life that causes the death of an
individual; or (3) commits or attempts to commit a felony, other than manslaughter, and in
the course of and in furtherance of the commission or attempt, or in immediate flight from
the commission or attempt, he commits or attempts to commit an act clearly dangerous to
human life that causes the death of an individual. See Tex. Pen. Code Ann. § 19.02(b)
(Vernon 2003). 

 Although Strickland cites the standard of review for legal sufficiency of the evidence
supporting the elements of the offense, all the evidence he discusses in support of his first
issue relates only to his affirmative defense of involuntary intoxication. See Tex. Pen. Code
Ann. §§ 2.04, 8.04 (Vernon 2003). We understand Strickland's argument to be that he
adequately proved his affirmative defense that he was involuntarily intoxicated at the time
Mary was murdered. Meraz v. State, 785 S.W.2d 146, 151 (Tex. Crim. App. 1990). "Since
an affirmative defense is obviously not an element of the offense, it is within the State's
power and its responsibility to regulate the procedures under which such laws are carried out,
so long as the traditional notions of due process are not offended." Id. at 152. "[A] review
of the facts relative to proof of an affirmative defense does not inexorably lead to a review
of facts relative to proof of the elements of the offense. Although a defendant certainly is
not foreclosed from requesting both reviews, the former does not incorporate the latter." Id.
at 153. 

 With respect to reviewing a jury finding where the jury has rejected a defendant's
affirmative defense, we review the evidence in the light most favorable to the jury's finding
and reverse only if the evidence has conclusively established the defense. Ballard v. State,
161 S.W.3d 269, 270-22 (Tex. App.-Texarkana 2005) (discussing supporting and contrary
authority regarding intermediate appellate court's jurisdiction to address legal sufficiency
arguments that arise after a jury's rejection of the defendant's affirmative defense), aff'd, 193
S.W.3d 916 (Tex. Crim. App. 2006). 

 Involuntary intoxication is an affirmative defense to a criminal indictment if, at the
time of the alleged offense, the defendant, as a result of a severe mental defect caused by
involuntary intoxication, did not know that his conduct was wrong. Mendenhall v. State, 77
S.W.3d 815, 817-18 (Tex. Crim. App. 2002). Therefore, in response to the arguments
Strickland raises in issue one, we review the evidence to determine whether Strickland
proved that he was temporarily insane as a result of his involuntary intoxication.

The Relevant Evidence


 The State's evidence established the circumstances that led to Mary's murder. Mary
and Strickland had been married for approximately ten years before the date she was killed. 
When the events occurred that led to her murder, Mary and her three children were residing
with Strickland in Liberty County, Texas. Strickland was the father of Mary's youngest
child, and a stepfather to her two oldest children.

 Mary's oldest daughter, Barbara, testified at the trial on behalf of the State. Before
Mary's death, Barbara overheard her mother and Strickland arguing about money. 
According to Barbara, when she and Mary later entered the living area, Strickland thought
they had been discussing him, so he got upset and hit Barbara on the right cheek. At that
point, Barbara stated that she intended to call the police. Strickland stormed into the next
room, and Mary followed him to the doorway, and said, "What are you going to do? Shoot
us all?" 

 Strickland came out of the doorway holding a rifle, barrel pointing towards the left, 
and moved toward Barbara. Mary stepped forward to stop Strickland from moving closer
to Barbara. With her palms facing out, Mary pushed against the gun in Strickland's hands
and pushed Strickland backwards. Strickland struck Mary on the face with the butt of the
rifle and she screamed in pain. Mary fell on her back. Barbara noticed the gun move in her
direction. Strickland shot Barbara, wounding her in the arm and the abdomen. Barbara only
heard one shot. Barbara fell forward, and then said, "Please don't shoot me anymore. I can't
take anymore."

 At that moment, Strickland's mood changed. Strickland told Barbara he would not
shoot her again and then he moved into another room. Barbara saw her mother laying face
down on her stomach. Barbara saw a large puddle of blood under Mary's head. Barbara
testified that she tried to drag herself toward a telephone. Strickland suggested he should call
for emergency services. Still holding the gun, Strickland retrieved a telephone. Before
dialing, Strickland said, "They are going to put me away for this, that this is going to be
embarrassing to my folks[.]" Barbara could hear Strickland saying, "I just shot my wife and
stepdaughter." He was holding the rifle with the barrel up. Strickland asked the operator
what he should do with the gun. Strickland gave Barbara a towel to put on her wounds. 
Strickland told her, "Talk to me so you don't die."

 On cross-examination, Barbara testified that this was not the first time Strickland had
threatened to shoot her with his rifle. She also explained that Strickland had been enraged
when he initially hit her, but that once he entered the room with his rifle he appeared to be
calm. Barbara explained that she believed Strickland had threatened her to prevent her from
calling the police. 

 Strickland testified during the trial. He explained that he regularly took several
medications that are used to treat chronic diseases. Mary handled his medications, and in
addition to medications for diabetes and hypertension, he took Flomax, and a medication for
erectile dysfunction. According to Strickland, Mary had ordered the pills from India. 
Approximately four days before the homicide, Strickland thought his medications had
adversely affected his eyesight, his hearing, and his memory. He felt dizzy and unbalanced. 
At that point, Strickland testified that he asked Mary, "Are you sure you got my medicine
right?" Strickland explained that after she had checked his dispenser, Mary told him that she
had mistakenly put Cialis in his dispenser. According to Strickland, he noticed that he could
hardly hear and he felt dizzy, and that at that particular point it did not take much to get him
"worked up." There was no medical testimony presented to the jury to support Strickland's
testimony that any of the medications, either individually or in combination, can cause a
person to suffer the types of symptoms that Strickland claims he experienced.

 Strickland also discussed an altercation between him and Mary's oldest son that had
occurred three days prior to Mary's death. Strickland indicated that after an argument over
whether Mary's son could purchase a new four-wheeler, he told Mary's son to go to his
grandmother's home. Mary's son would not leave, and said, "I ain't got to go nowhere." At
Strickland's request, an officer with the sheriff's department came to their home, and
according to Strickland, he made the officer aware of the problem. 

 Several days later, Mary told him that she was taking her oldest son to town in order
to purchase a four-wheeler. Strickland responded by walking off and then getting his rifle. 
When asked why he got the gun, Strickland replied, "I guess my head was screwed up." 
Mary walked up to him. According to Strickland, "The next thing I know Mary, she is on
her stomach on the floor; but she never said nothing." Strickland thought Mary was
"knocked out" but he felt something tug on the rifle and noticed that Mary was trying to "jerk
that rifle out." He also saw Barbara "was going to try to help her momma get that rifle." 
Mary "jerked maybe three times" on the strap of the rifle. "Scared," Strickland flew back
with his finger on the trigger. According to Strickland, "[t]hat had to be when it went off." 

 Strickland testified that "there was a time there I even hallucinated, and I thought God
was talking to me." A voice "just like somebody was standing there" said "Go ahead. Go
ahead." Strickland claimed "it was like something took control of me" and "I wasn't myself,
and that's why I have been wondering what happened too." Strickland claimed that he
"blanked out" at the moment of the shooting and could not recall the order in which he shot
the two victims. Strickland testified, "When I come back to my senses, I remember--the first
thing I remember I said something about 'Oh, God, what have I done,' and I'm standing there
with that rifle and my wife is laying on her stomach and [Barbara], she is over there in the
doorway [.]"

 Strickland told his son that he needed to call for emergency services. Strickland
testified that he kept holding the rifle because he was worried that his stepson would show
up. He further testified, "I didn't want nobody else to get hurt." Strickland got a telephone,
called 911, and told the dispatcher, "I just shot my wife and my stepdaughter and I need an
ambulance and the sheriff's department and get them there quick." Strickland admitted that
he might have told the operator that his temper ran away with him. During the call he did not
mention his claim that he had suffered from any hallucinations. 

 Referring to his temper, Strickland testified, "I'm not going to say it had everything
to do with it. I'm telling you there were some medications there, and my mind--that wasn't
my normal self, no, sir, not at all." Asked why he did not mention that Mary grabbed the rifle
during his conversation with the dispatcher, Strickland replied, "There are certain things,
[prosecutor], I'm saving for my lawyers; and that was one of them, grabbing the sling and
the medication."

 The arresting officer testified that Mary's older son drove up as the officer was taking
Strickland into custody. Strickland told Mary's son that he was sorry and then told the
officer, "Whenever he finds out what happened in that house, he is going to kill me."

 In his argument on appeal, Strickland refers to the evidence that he was taking
medications for various ailments, to his testimony that he was experiencing side effects from
the medications, and to his testimony that he experienced an auditory hallucination at the
moment of the shootings. Strickland argues that this evidence establishes that he was
involuntarily intoxicated on the medications and that this evidence proves that he did not
know that his conduct was wrong.

Analysis - Involuntary Intoxication and Legal Sufficiency


 When we consider the evidence in the light most favorable to the verdict, we conclude
that the jury could have rationally rejected Strickland's claim that he was suffering from a
severe mental defect caused by involuntary intoxication. See Tex. Pen. Code Ann. § 8.04. 
The record reflects that Strickland was very angry with his wife and his stepdaughter before
the shooting, but other than a display of ill temper, Strickland's behavior is not consistent
with his claim of a medication-induced temporary insanity. The comments Strickland made
after the shooting to Barbara and to the various people he talked to in the immediate period
thereafter tend to show that Strickland knew that killing Mary violated the law and was
wrong. Additionally, other than Strickland's history that he was on medications at the time,
his testimony that he had not been feeling well, his request that Mary check his medications
for accuracy of dosage, and his version of Mary's shooting that includes his claim that he
heard voices, there is no other evidence to support Strickland's claim that his medications
rendered him temporarily insane at the moment he took Mary's life. As the exclusive judge
of the weight to be given to the testimony, the jury could have rejected Strickland's claim that
he had experienced an auditory hallucination. See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979). 

 The jury might have also decided to reject his claim that his intoxication was
involuntary. The evidence shows that four days prior to the offense Strickland was aware
that his combination of medications were affecting him mentally. Nevertheless, he decided
to continue to take the medications. That circumstance would allow his jury to reject his
claim of involuntary intoxication. See Hanks v. State, 542 S.W.2d 413, 415-16 (Tex. Crim.
App. 1976) (noting that defendant's consumption of drink after acknowledging his awareness
of its adulteration would not be sufficient to raise issue of involuntary intoxication). 

 Having considered all of the evidence in the light most favorable to the jury's verdict,
we conclude that the evidence allowed the jury to reject Strickland's claim that he suffered
from temporary insanity when he shot and killed Mary. 

Analysis - Mens Rea and Legal Sufficiency


 Viewed in the light most favorable to the verdict, the evidence also supports a
conclusion that Strickland intentionally or knowingly caused Mary's death, or that he
intended to cause serious bodily injury and committed an act clearly dangerous to Mary's life
that caused her death. Although Strickland testified that Mary grabbed the rifle strap and that
he jumped back in fear, the jury did not have to believe him. See Tex. Code Crim. Proc.
Ann. art. 38.04. The jury was free to believe Barbara's testimony that Strickland first
became angry, hit her on the cheek, and then displayed a rifle in an effort to prevent Barbara
from calling law enforcement. The jury could also believe Barbara's testimony that Mary
attempted to protect her from Strickland, and in the course of resisting his effort to attack
Barbara, Mary was shot. Together with Strickland's admissions that he shot both women, 
that his temper ran away with him, and that he murdered his wife, the jury could rationally
find that Strickland either knowingly or intentionally killed Mary or that he intended to cause
serious body injury and committed an act clearly dangerous to human life by firing the
weapon. See Tex. Pen. Code Ann. § 19.02(b). 

 We conclude that the jury could rationally find beyond a reasonable doubt that the
State proved the required mental state for the offense of murder. See Jackson v. Virginia,
443 U.S. at 319. Having considered all of the arguments Strickland asserts under his legal
sufficiency issue, we overrule issue one.

Unanimous Verdict


 In his second issue, Strickland contends that the charge did not require the jury to
render a unanimous verdict in determining whether he had caused Mary's death while under
the influence of sudden passion arising from an adequate cause. See Tex. Pen. Code Ann.
§ 19.02(d) (Vernon 2003). Strickland admits that he did not object to the charge, but he
argues egregious harm is shown by the jury's failure to answer either "yes" or "no" to the
special issue. (1)

 The punishment charge included general instructions to the jury followed by a section
titled "SPECIAL ISSUE NO. 1," which issue was then followed by additional instructions.
The trial court instructed the jury on community supervision, and then instructed the jury on
sudden passion. The trial court charged the jury, in pertinent part, as follows:

 Now, bearing in mind the foregoing instructions, if you believe the
defendant proved by a preponderance of the evidence that the defendant,
having committed the offense of murder, caused the death of MARY
VIRGINIA STRICKLAND under the immediate influence of sudden passion
arising from an adequate cause, you must make an affirmative finding as to the
special issue, and the punishment you must assess is by confinement in the
Institutional Division of the Texas Department of Criminal Justice for any term
of not more than twenty years or less than two years. In addition, a fine not to
exceed $10,000.00 may be imposed.

 But, if you do not believe the defendant proved by a preponderance of
the evidence that the defendant, having committed the offense of Murder,
caused the death of MARY VIRGINIA STRICKLAND under the immediate
influence of sudden passion arising from an adequate cause, you must make
a negative finding as to the special issue, and the punishment you must assess
is by confinement in the Institutional Division of the Texas Department of
Criminal Justice for any term of not more than 99 years or less than 5 years. 
In addition, a fine not to exceed $10,000.00 may be imposed. 

 Do you, the Jury, find by a preponderance of the evidence that the
defendant caused the death of MARY VIRGINIA STRICKLAND under the
immediate influence of sudden passion arising from an adequate cause?

 The Jury will answer either, "Yes" or "No."

 

 ANSWER: ________________________________

 

 ___________________________

 FOREPERSON OF THE JURY

 

 Your verdict must be a unanimous vote of all members of the jury. In
arriving at your verdict, it will not be proper to fix the same by lot, chance, or
any other method than by a full, fair, and free exercise of the opinion of the
individual jurors under the evidence admitted before you.

 

 The jury did not write an answer on this form in the place indicated for its answer. 
Following the language we have quoted, the charge then instructs the jury not to consider
how long a defendant could be required to serve based on a sentence it might choose to
impose, and also instructs the jury to select a foreperson. The charge is dated and signed by
the judge.

 The verdict forms immediately followed the instruction forms. The verdict forms
informed the jury YOU WILL FIND ONE AND ONLY ONE OF THE FOLLOWING
VERDICTS: The ten attached verdict forms, all of which were dependent upon the jury
having found Strickland guilty of Murder, presented the various punishment alternatives. 
Each of the first five verdict forms states the jury "made a negative finding to special issue
number 1," while each of the last five verdict forms states that the jury "made an affirmative
finding to special issue number 1." The foreperson of the jury signed the second verdict
form, which states:

 WE, THE JURY, having found defendant guilty of Murder and having
made a negative finding to special issue number 1, assess his punishment at
confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of: 60 (Life or any term of not more than 99 years or less
than 5 years), and in addition to such confinement we assess a fine of $10,000.

 



Analysis


 State law requires jury unanimity on the issue of sudden passion. Sanchez v. State,
23 S.W.3d 30, 33-34 (Tex. Crim. App. 2000); see Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(c) (Vernon Supp. 2009); see also Tex. Pen. Code Ann. § 19.02(d). When the appellant
asserts jury charge error, we first determine whether error exists. Ngo v. State, 175 S.W.3d
738, 743 (Tex. Crim. App. 2005). If error exists, we analyze that error for harm. Id. The
degree of harm required for reversal depends on whether that error was preserved in the trial
court. Id. When the appellant preserved error in the trial court by timely objection, the
record must show only "some harm." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985) (op. on reh'g). If the appellant failed to raise his objection in the trial court,
charge error compels reversal only if the error resulted in "egregious harm." Id. 

 Strickland claims the charge did not require a unanimous jury verdict on sudden
passion. In this case the charge instructed the jury that "Your verdict must be a unanimous
vote of all members of the jury," and it was placed on the next to the last page of the court's
instructions to the jury. Each of the separate verdict forms implicitly required the jury to
render a finding on the sudden passion issue. 

 Additionally, after the trial court clerk read the verdict, including the statement that
the jurors had "made a negative finding to special issue 1," each of the jurors subsequently
affirmed that the verdict that had been read was their verdict. See Tex. Code. Crim. Proc.
Ann. art. 37.05 (Vernon 2006). Thus, by polling the jury, the record contains added evidence
to indicate that the jury unanimously rejected Strickland's claim of "sudden passion." Cf.
Sanchez, 23 S.W.3d at 32 (poll of jury revealed three jurors wanted to find in appellant's
favor on the issue of sudden passion). Even if we were to assume that the trial court erred
in failing to require the jury to answer special issue one, no egregious harm is shown because
we presume the jury followed the court's instructions to render a unanimous verdict, and this
record contains additional evidence to demonstrate that the jury verdict was in fact
unanimous. See Curry v. State, 222 S.W.3d 745, 753 (Tex. App.-Waco 2007, pet. ref'd). 
We overrule issue two and affirm the judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on January 29, 2010

Opinion Delivered February 17, 2010

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.
1. The trial court instructed the jury on the issue of sudden passion. Although we have
not been asked to address whether Strickland was entitled to such an instruction based on the
evidence in this case, we nevertheless note that ordinary anger or causes of a defendant's
own making are not "adequate cause" and are not considered to be sufficient to raise the
defense. Naasz v. State, 974 S.W.2d 418, 423 (Tex. App.-Dallas 1998, pet. ref'd). 
"Adequate cause" is statutorily defined to mean "cause that would commonly produce a
degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to
render the mind incapable of cool reflection." Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon
2003); see also McKinney v. State, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (noting that
yelling and pushing do not rise to the level of adequate cause and noting that the defendant
had time to deliberate over his actions); Trevino v. State, 100 S.W.3d 232, 241 (Tex. Crim.
App. 2003) ("The mere fact that a defendant acts in response to the provocation of another
is not sufficient to warrant a charge on sudden passion."); Mason v. State, 798 S.W.2d 854,
855-56 (Tex. App.-Houston [14th Dist.] 1990, no pet.) (no evidence of sudden provocation
where, following a fistfight, the defendant called police and then picked up a shotgun and
killed the victim). No party argues that Strickland could not have been harmed because he
was not even entitled to the instruction in the first instance. Therefore, we expressly have
not reached any issue concerning whether the evidence in the record supports the trial court's
decision to submit Strickland's issue on his claim that he was overcome by a "sudden
passion," an affirmative answer to which would serve to mitigate the punishment range
available for the jury in assessing his sentence for Mary's murder. Tex. R. App. P. 47.1
(court's opinion is to be as brief as practicable but address every issue raised that is necessary
to the final disposition of the appeal).