COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




TIMOTHY K. NORTH,

                            Appellant,

v.


THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00248-CR

Appeal from the

363rd District Court
 
of Dallas County, Texas 

(TC# F04-35779-QW) 





O P I N I O N

            Timothy K. North appeals his conviction for criminal solicitation of a minor. A jury
found him guilty and assessed punishment at 10 years’ imprisonment, probated to 10 years of
community supervision, and imposed a fine of $180. In seven issues, Appellant challenges the
legal sufficiency of the evidence to sustain his conviction and to support the jury’s rejection of
his renunciation defense and complains of jury charge errors. We find no reversible error and
affirm.
            Over several weeks in August 2004, Appellant, using the screen name “tkntwin,”
engaged in online chats and communications with Detective Jose Delfierro, an undercover police
officer posing as a fourteen-year-old girl from Irving, Texas under the username “lizzy_cheer07.” 
At trial, Detective Delfierro explained that he is assigned to the Special Investigations Section of
the Irving Police Department, which investigates internet crimes against children. On August 10,
2004, Detective Delfierro logged on to the Yahoo Messenger program as lizzy_cheer07 or
“Lizzy,”entered a chat room called “Girls Like Older Men Best” and was contacted by Appellant
through an instant message, a contacting feature which allows two people in a chat room to chat
privately with each other in real time. Lizzy_cheer07’s profile identified her as: real name,
Lisette; nickname, Lizzy; location, Texas; gender, female; marital status, single; age, blank;
occupation, “fish in hi skool [that means 9th grade];” hobbies, “partying, chilling wit my gurlz
and hangin wit my boyz; latest news, “im 14 and no i dont want a bf [boyfriend].” Appellant’s
profile indicated that he was 29 years old, “single and looking,” and from Dallas. 
            In Appellant’s first conversation with “Lizzy” on August 10, she told him she was a
fourteen-year-old female from Irving. Appellant acknowledged Lizzy’s age by saying, “39
single; maybe im to old for you?” Appellant invited Lizzy to go swimming at the apartment
complex where he worked. He suggested that they could drink beer after swimming, to which
Lizzy replied, “im 14 silly i dont drink.” Appellant began sending live video feed of himself. He
asked Lizzy if she was “into older guys” and what she liked about them. Appellant said he was
“working on a sixpack,” referring to his abdominal muscles, and then unbuttoned his shirt and
flexed for the web camera. Appellant again invited Lizzy to go swimming and to bring a friend
along for company. Lizzy reminded Appellant that she was only fourteen and did not have a car. 
Appellant said he remembered and offered to come get her.
            Appellant asked Lizzy for her picture. Lizzy sent Appellant a picture of a female Irving
police officer taken when she was approximately fourteen years old. Appellant commented that
Lizzy was a “hottie,” “a sweet looking woman,” and a “little yummy looking.” Appellant again
talked about meeting up and suggested swimming and a movie. Appellant said he could take a
day off and hang out with Lizzy. Appellant invited Lizzy to a pool party at his apartment
complex that weekend and said he would tell people there that she was his girlfriend. When
Lizzy again mentioned her age, Appellant replied, “that just means no dancing in the bars; we
could still hook up.” Appellant asked Lizzy if she enjoyed “kissing and stuff.” Appellant said it
would be great to make out with Lizzy. He told Lizzy, “im willing to bet, if we hooked up, we
have a real good time” and then suggested stretching out on the couch and making out. 
Appellant told Lizzy that he likes to take his time and explore his partner and check out
everything about her body he can. By “exploring,” Appellant said he meant he kisses his way
around the body, tasting and licking as much as he can. Appellant asked Lizzy if what he was
saying was “weirding” her out, and Lizzy replied no. Appellant told Lizzy, “if youve never
experienced sex before some of what i say may scare ya; dont want to do that.” Appellant stated
that he thought it was cool that Lizzy was curious about sex and said, “and to be honest, id kind
like to be the one to teach ya.” Appellant told Lizzy that he had to get back to work. Lizzy
declined his request for her telephone number. Appellant then ended the conversation by trying
to arrange a time to meet at her place for the following week. 
            On August 14, Appellant sent Lizzy an offline message, telling her that he was back from
Indiana and wanted to talk on Monday. He initiated another online chat on August 16. 
Appellant asked if they were still going to try to meet that week and discussed what day he could
come over when Lizzy’s mother would not be home. Appellant repeatedly asked for Lizzy’s
address and made references to her young age and their age difference. Appellant ended the chat
by requesting her address and telling her that if she changed her mind about meeting, he would
not be upset. About four hours later, Appellant sent Lizzy an offline message telling her that he
could not come over tomorrow and suggesting they meet the next Tuesday.
            On August 20, Appellant initiated another conversation with Lizzy. Appellant apologized
for not being online to talk, but said he still wanted to meet up with her. When Lizzy asked him
what he wanted to do, Appellant replied, “everything” and said he might have to come back a
few times. By “everything,” Appellant said he meant “kissing hugging licking exploring” while
Lizzy was naked. Appellant said he was going to taste her by kissing her all over her body and
would lick her lips “between the legs, tasty spot.” When Lizzy said she was scared that she
would get in trouble, Appellant told her that he would never tell anyone because he could get in
trouble because she was fourteen. Appellant said he would never say anything because if she
liked him, he would like to come back and might even change jobs to be near her. Appellant
asked if Lizzy desired to be with a guy and said he was anxious to meet her. Appellant said he
was scared and nervous because she was “so hot n sexy” and he wanted her. He said he would
be gentle and easy and stop if she wanted, but if she did not say stop, he would not stop until he
was done exploring her. Appellant stated that “exploring” was his way of saying “i want to make
love to you and kiss u all over.” When Lizzy said she was scared of getting pregnant, Appellant
said he could bring condoms for her protection, but he was sterile. Appellant ended the
conversation, saying he had to go back to work, but would come over next week after school.
            On August 22, Appellant sent Lizzy an offline message, saying he hoped to see her at
lunchtime. On August 23, Appellant initiated a third conversation with Lizzy. Appellant asked
about coming over and said he could meet her after school at her home and would leave by 5:30. 
Appellant said he wanted to kiss her “mouth, neck, breast, and even more farther down the
body.” He asked if she was curious about anything in particular, including oral sex. Appellant
said he would kiss her “pussy lips.” Appellant ended the conversation, saying he had to get back
to work, but told her to “drop me a line when you get home tomorrow from school and let me
know how it went for you. we can still meet later if ya want.” 
            On August 25, Appellant sent Lizzy an offline message, saying that he hoped they could
see each other again soon and talk. The following day, Appellant sent Lizzy an instant message
and they began chatting. Appellant asked about when he could come over and suggested the next
Wednesday. Appellant asked for Lizzy’s address again. 
            Five days later, on August 31, Appellant initiated another conversation with Lizzy online. 
Appellant told Lizzy that he gave notice at his job and was “moving out north to be near my new
sweety,” referring to Lizzy. Appellant told Lizzy he would be dropping off his resume at some
places in her area, so he could stop by. Appellant suggested that Lizzy stay home sick or skip
school. Appellant told Lizzy he wanted to kiss her all over and make love to her. Appellant then
discussed having sex with Lizzy, who indicated she was a virgin. In reply to Lizzy’s fears about
getting pregnant, Appellant said, “if we have sex and not just make out then you wont be preg; i
can understand your concerns.” Lizzy told Appellant that fourteen was too young to be a mom
and Appellant replied, “ya i no.” Appellant told her he would bring condoms even though he
was sterile. At the end of the chat, Appellant suggested that on the next day Lizzy leave him a
message with her address if she was home alone and then he would come over. Appellant sent
an offline message to Lizzy asking for her address and discussing the plan to meet at her place. 
            On September 1, Appellant contacted Lizzy. Lizzy gave Appellant an address and
reminded him to bring condoms. Appellant told Lizzy he was leaving work and would see her in
a little while. Detective Delfierro and his unit proceeded to set up the sting location at the
designated apartment in Irving. Officers waited inside the apartment as well as outside in the
parking lot of the apartment complex for Appellant to arrive. Appellant drove over twenty miles
to the apartment complex. The outside officers saw Appellant look in the direction of the
apartment door before walking over to the complex office with a piece of paper in his hand,
which police later found out was his resume. Appellant left the office, looked in the direction of
the apartment again, and walked back towards his vehicle. Appellant was then taken into
custody. After Appellant was arrested, the police officers gave Appellant his Miranda warnings
and then conducted an interview. During the interview, Appellant told Detective Delfierro that
he was not really going to do it. Numerous times, Appellant said he just could not do it and was
heading back to his vehicle to leave. Police later searched Appellant’s vehicle and found a
condom under the seat, the location address, a map to Irving, and a resume.
            In Issue One, Appellant challenges the legal sufficiency of the evidence to support his
conviction. Specifically, Appellant asserts the State failed to prove the requisite mental state for
the offense of criminal solicitation of a minor. 
            In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979);Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). More particularly, sufficiency of the evidence should be measured by the
elements of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The trier of fact is the sole judge of the
weight and credibility of the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App.
2000). In conducting our review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556,
562 (Tex.Crim.App. 2000); Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any
inconsistencies in the evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d
394, 406 (Tex.Crim.App. 2000).
            Here, the State was required to prove beyond a reasonable doubt that Appellant with the
intent that sexual assault be committed, Appellant requested, commanded, or attempted to
induce, Lizzy, whom Appellant believed to be a minor, to engage in deviate sexual intercourse
and sexual intercourse that, under the circumstances surrounding Appellant’s conduct as
Appellant believed them to be, would constitute sexual assault and would make Lizzy a party to
the commission of that offense. See Tex.Pen.Code Ann. §§ 15.031(b), 22.011(a)(2)(Vernon
2003 & Supp. 2006). Intent can be inferred from the defendant’s acts, words, and conduct. See
Hall v. State, 124 S.W.3d 246, 252 (Tex.App.--San Antonio 2003, pet. ref’d)(mental states, such
as intent, are almost always inferred from the defendant’s words, acts, or conduct); Henderson v.
State, 825 S.W.2d 746, 749 (Tex.App.--Houston [14th Dist.] 1992, pet. ref’d)(trier of fact may
reasonably conclude based on circumstantial evidence the requisite culpable mental state).
            The evidence shows that from August 10 to September 1, 2004, Appellant initiated online
chats with “Lizzy,” whom Appellant believed to be a minor. In the August 10 chat, Appellant
engaged in inappropriate conduct by referring to Lizzy as a “hottie” and “sweet looking woman,”
undressing in front of the web camera, and by inviting her to his place to go swimming so he
could see her in a bathing suit. The conversation soon became more sexually explicit, with
Appellant suggesting they kiss, “hook up” and “make out.” Appellant wanted to explore her
body, tasting and licking as much as he could. Appellant said he thought it was cool that Lizzy
was curious about sex and “to be honest” he wanted to be the one who taught her about sex. 
Appellant ended the conversation because he had to go back to work, but not before attempting
to arrange a meeting for the following week. In the August 16 chat initiated by Appellant, he
repeatedly asked for Lizzy’s address, made references to her age, and was persistent in arranging
a time to meet. In the August 20 chat, Appellant apologized for not being online to talk, but said
he still wanted to meet up with her. Appellant again engaged in a sexually explicit conversation
with Lizzy, telling her he wanted to kiss, hug, lick, and explore her naked body. Appellant said
he was going to lick her “between the legs.” Appellant again acknowledged that Lizzy was only
fourteen and that he could get “in trouble” because of her age. Appellant told Lizzy that he
wanted to make love to her and kiss her all over. Appellant said he would bring condoms for her
protection. Appellant ended the conversation to go back to work, but said he would come over
the next week after school. In the August 23 chat, Appellant discussed performing oral sex on
Lizzy in explicit terms and again pressed Lizzy about coming over to her home after school. On
August 23, Appellant initiated another online conversation, in which he told Lizzy he wanted to
kiss her all over and make love to her. Appellant again said he would bring condoms to allay
Lizzy’s concerns about becoming pregnant. On September 1, Appellant contacted Lizzy and was
given an address and reminded to bring condoms. Appellant then drove over twenty miles to
meet Lizzy. Appellant dropped off his resume at the apartment complex office, glancing at
Lizzy’s apartment door as he walked to and from the office. Appellant was arrested as he was
heading back to his parked vehicle. Police officers searched the vehicle and found a condom
under the seat. 
            Appellant argues that from the circumstances present, the jury could only have inferred
that he liked to flirt with underage girls on the Internet because he never expressed a firm intent
to act upon his expressed desires, that is, to commit sexual assault, especially since he did not go
near Lizzy’s apartment on the day of his arrest. Contrary to Appellant’s contention, the jury
could have rationally inferred the requisite intent to engage in criminal solicitation of a minor
based on the numerous online chat logs, in which he persistently and explicitly attempted to
induce Lizzy, whom he believed to be fourteen years old, to engage in oral sex and sexual
intercourse. Appellant’s sexual requests were initiated by Appellant and he expressed his desires
with only slight inquiries from Lizzy. Indeed, Appellant was willing to travel some distance to
meet up with Lizzy at a time when he thought her mother would not be home and he had actual
knowledge that his intended conduct with Lizzy would be illegal. We conclude that the evidence
is legally sufficiency to support Appellant’s conviction for criminal solicitation of a minor. Issue
One is overruled. 
            In Issues Two, Three, and Six, Appellant complains of jury charge error at the guilt-innocence phase of trial. When an appellant alleges jury charge error on appeal, our first task is
to determine whether error actually exists in the charge. Middleton v. State, 125 S.W.3d 450,
453 (Tex.Crim.App. 2003); Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If
there is jury charge error, we must then determine if the error caused sufficient harm to warrant
reversal. Hutch v. State, 922 S.W.2d 166, 170-71 (Tex.Crim.App. 1996); Almanza, 686 S.W.2d
at 171. Preservation of charge error does not become an issue until we assess harm. Ngo v.
State, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm necessary for reversal
depends on whether the appellant preserved the error by objection. Ngo, 175 S.W.3d at 743. 
When the defendant fails to object or states that he has no objection to the charge, we will not
reverse for jury-charge error unless the record shows “egregious harm” to the defendant. Id. at
743-44; Almanza, 686 S.W.2d at 171. If the error was the subject of a timely objection at trial,
“then reversal is required if the error is ‘calculated to injure the rights of defendant,’ which
means no more than that there must be some harm to the accused from the error.” Almanza, 686
S.W.2d at 171, quoting Tex.Code Crim.Proc.Ann. art. 36.19.
            In Issue Two, Appellant asserts the trial court erred by failing to correctly apply the
conduct elements to the indicted offense. The jury charge, in relevant part, stated:
A person acts intentionally, or with intent, with respect to the nature of his
conduct or with respect to a result of his conduct when it is his conscious
objective or desire to engage in the conduct or cause the result.
 
A person acts knowingly, or with knowledge, with respect to the nature of
his conduct, or with respect to the circumstances surrounding his conduct when he
is aware of the nature of this conduct or that the circumstances exist. A person
acts knowingly, or with knowledge, with respect to a result of his conduct, when
he is aware that his conduct is reasonably certain to cause the result.

. . .
 
Now, bearing in mind the foregoing instructions, if you find and believe
from the evidence, beyond a reasonable doubt, that the defendant, TIMOTHY K.
NORTH, on or about the 1st day of September A.D., 2004 in the County of Dallas
and State of Texas, did unlawfully then and there, with intent that an offense be
committed, namely: Sexual Assault, by any means, to-wit: by telephone or by
computer or in person, request, command or attempt to induce LIZZY, an
individual whom the defendant believed to be a person younger than 17 years of
age, to engage in specific conduct, to-wit: deviate sexual intercourse or sexual
intercourse, that under the circumstances surrounding the defendant’s conduct as
the defendant believed them to be, would constitute said offense and would make
LIZZY a party to the commission of said offense, then you will find the defendant
guilty of the offense of Criminal Solicitation of a Minor to Commit Sexual
Assault, as charged in the indictment.
 
If you do not so believe from the evidence beyond a reasonable doubt, or if
you have a reasonable doubt thereof, then you will acquit the defendant and say by
your verdict ‘not guilty.’

            There are three conduct elements that can be involved in an offense: (1) the nature of
conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. See
Tex.Pen.Code Ann. § 6.03 (Vernon 2003); McQueen v. State, 781 S.W.2d 600, 603
(Tex.Crim.App. 1989). An offense may contain any one or more of these “conduct elements”
which alone or in combination form the overall behavior which the Legislature has intended to
criminalize; it is those essential “conduct elements” to which a culpable mental state must apply. 
McQueen, 781 S.W.2d at 603. Where specific acts are criminalized because of their very nature,
a culpable mental state must apply to committing the act itself (nature of the conduct). Id.;
Washington v. State, 930 S.W.2d 695, 699-700 (Tex.App.--El Paso 1996, no pet.). In this case,
the trial court should have limited the statutory definition of culpable mental states to proving the
nature of conduct element which applies to the indicted offense. See Patrick v. State, 906
S.W.2d 481, 492 (Tex.Crim.App. 1995).
            Appellant did not object to this error, thus Appellant must show he suffered egregious
harm. See Almanza, 686 S.W.2d at 171. In determining the degree of harm, we look to the entire
jury charge, the state of the evidence including contested issues, and the weight of the probative
evidence, arguments of counsel, and any other relevant information from the record. Id. “In
assessing harm resulting from the inclusion of improper conduct elements in the definitions of
culpable mental states, we ‘may consider the degree, if any, to which the culpable mental states
were limited by the application portions of the jury charge.’” Patrick, 906 S.W.2d at 492. 
Further, the record must show that a defendant has suffered actual, rather than merely theoretical
harm from the charge error. Almanza, 686 S.W.2d at 174.
            Despite the inclusion of all three alternative conduct elements in the definition of
intentionally and knowingly, the application paragraph correctly required the jury to convict
Appellant only if it found beyond a reasonable doubt that with intent that a sexual assault be
committed, Appellant attempted, by telephone or computer or in person, to induce Lizzy to
engage in deviate sexual intercourse or sexual intercourse. Thus, the charge required the jury to
find not only that Appellant engaged in the proscribed conduct, but also whether he did so with
the requisite specific intent. At trial, Appellant conceded that his online conversations with
Lizzy were inappropriate and that the only contested issue was whether he was entitled to his
asserted renunciation defense. Indeed, both the State and defense counsel devoted most of their
jury arguments to the renunciation defense. Appellant contends that he was egregiously harmed
because the charge misdirected the jury’s attention to conduct that occurred on September 1,
2004, rather than the online chat room conversations. The State, however, is not bound by the
“on or about” date on which the offense is alleged to have been committed; rather, the State may
prove an offense with a date other than the one alleged if the date is anterior to the presentment
of the indictment and within the statutory limitation period. Sledge v. State, 953 S.W.2d 253,
255-56 (Tex.Crim.App. 1997). Therefore, the charge did not limit the jury to considering only
Appellant’s conduct on the specific date alleged in the indictment. We conclude that no harm
resulted from the trial court’s failure to limit the definitions of culpable mental states to prove the
conduct element for the indicted offense. Issue Two is overruled.
            In Issue Three, Appellant argues that the trial court erred by including a definition of
reasonable doubt in the jury charge. After instructing the jury that the State has the burden of
proving each and every element of the offense charged beyond a reasonable doubt and if it fails
to do so, it must acquit the defendant, the trial court then gave the following instruction: “It is
not required that the prosecution prove guilt beyond all possible doubt; it is required that the
prosecution’s proof excludes all ‘reasonable doubt’ concerning the defendant’s guilt.” This
Court has previously held that it is not error for the trial court to submit such an instruction
because it is not a definition of “reasonable doubt.” See Hanks v. State, 104 S.W.3d 695, 702
(Tex.App.--El Paso 2003), aff’d, 137 S.W.3d 668 (Tex.Crim.App. 2004); Torres v. State, 116
S.W.3d 208, 212 (Tex.App.--El Paso 2003, no pet.)(challenged instruction does not define
reasonable doubt but only instructs the jury that the defendant’s guilt must be proved beyond a
reasonable doubt, not beyond all doubt). Issue Three is overruled.
            In his sixth issue, Appellant contends the trial court erred by failing to define the law of
renunciation at the guilt-innocence phase of trial. Renunciation is an affirmative defense to a
charge of solicitation. See Tex.Pen.Code Ann. § 15.04(b)(Vernon 2003); Wesbrook v. State, 29
S.W.3d 103, 122 (Tex.Crim.App. 2000). The defense of renunciation for solicitation is set out in
the Texas Penal Code as follows:
It is an affirmative defense to prosecution under Section 15.02 or 15.03
that under circumstances manifesting a voluntary and complete renunciation of his
criminal objective the actor countermanded his solicitation or withdrew from the
conspiracy before commission of the object offense and took further affirmative
action that prevented the commission of the object offense.

Tex.Pen.Code Ann. § 15.04(b).

            At the charge conference, Appellant requested the following instruction on the
affirmative defense of renunciation:
It is an affirmative defense to this prosecution if, under circumstances
manifesting a voluntary and complete renunciation of his criminal objective, the
defendant abandoned his conduct before commission of the object offense and
took further action that prevented the commission of the object offense.
 
By the term ‘object offense,’ as used herein, is meant sexual assault by
deviate sexual intercourse and sexual intercourse as alleged in the indictment.
 
In order for you to consider an affirmative defense, it must be established
by a preponderance of the evidence. The term ‘preponderance of the evidence’ as
used herein, means the greater weight and degree of credible testimony or
evidence introduced before you and admitted in evidence in this case.
 
Therefore, even if you believe from the evidence beyond a reasonable
doubt that the defendant, TIMOTHY NORTH, committed the offense of criminal
solicitation as alleged in the indictment, but you further believe from a
preponderance of the evidence, under circumstances manifesting a voluntary and
complete renunciation of his criminal objective, that this, sexual assault with
Lizzy, the defendant abandoned his conduct before the commission of the object
offense, that is, sexual assault with Lizzy, and took further affirmative action that
prevented the commission of the object offense, that is, solicitation of sexual
assault with Lizzy, then you find the defendant TIMOTHY K. NORTH, Not
Guilty.
 
But, if you do not believe from a preponderance of the evidence that,
under circumstances manifesting a voluntary and complete renunciation of his
criminal objective, the defendant abandoned his conduct before the commission of
the object offense, or if you do not believe that he took further affirmative action
that prevented the commission of the object offense, you will find against the
defendant on this affirmative defense.

The trial court included an instruction on the renunciation defense, but over Appellant’s
objection, instructed the jury that “object offense” meant “solicitation of a minor for a sexual
assault by deviate sexual intercourse and sexual intercourse as alleged in the indictment.” In
addition, the application paragraph described the “criminal objective” as “criminal solicitation of
a minor for a sexual assault with Lizzy” and the “object offense” as “criminal solicitation of a
minor for a sexual assault with Lizzy.”
            Appellant complains of the definition given for the term “object offense,” arguing that the
object crime in this case is the sexual assault solicited, not the solicitation of the sexual assault. 
Appellant contends that the alleged error resulted in harm.
            Appellant modeled his proposed jury instruction on the renunciation defense for
solicitation, on a pattern jury charge instruction for criminal conspiracy to commit murder. See
Hon. Elizabeth Berry and Hon. George Gallagher, Texas Criminal Jury Charges § 4:190 (2005). 
In the proposed charge, Appellant tracked the pattern jury charge, but substituted “withdrew from
the conspiracy” with the phrase “abandoned his conduct” and “the offense of criminal
conspiracy, as alleged” with “the offense of criminal solicitation as alleged in the indictment.” 
Appellant’s proposed instruction, however, erroneously omitted the only portion of the statutory
defense that is applicable to solicitation crimes, that is, whether “the actor countermanded his
solicitation.”


 See Tex.Pen.Code Ann. § 15.04(b). The trial court’s modifications were an
attempt to redirect the jury’s attention to the relevant criminal objective, that is, whether
Appellant renounced his solicitations to Lizzy to engage in conduct that would constitute sexual
assault. Therefore, we conclude the trial court did not err in defining solicitation as the object
offense based on the ground asserted on appeal. Issue Six is overruled.
            In Issue Four, Appellant complains that the trial court failed to properly instruct the jury
on the issue of renunciation at the punishment phase. If a defendant has been found guilty of
solicitation, evidence that the defendant renounced his criminal objective by countermanding his
solicitation is admissible as mitigation at the punishment phase. See Tex.Pen.Code Ann.
§ 15.04(d). If there is a finding of renunciation, the punishment is one grade lower than that
provided for the offense committed. See Tex.Pen.Code Ann. § 15.04(d).
            Appellant asserts that the punishment charge on the mitigation issue of renunciation did
not meet the standard set forth in Sanchez v. State, 23 S.W.3d 30 (Tex.Crim.App. 2000).


 In
Sanchez, the defendant was found guilty of murder, but attempted at the punishment phase to
prove by a preponderance of the evidence that she shot the victim under the immediate influence
of sudden passion arising from an adequate cause. Sanchez, 23 S.W.3d at 32. In that case, the
trial court instructed the jury that they could find in the defendant’s favor on the sudden passion
issue only if they were unanimous, and that otherwise they would have to find against her. Id. at
32. The jury assessed punishment beyond the maximum allowed for a second-degree felony,
which would have been the range with a sudden passion finding in the defendant’s favor. Id. 
The trial court polled the jury and found that three jurors wanted to find in the defendant’s favor
on the sudden passion issue, but because of the trial court’s instructions, they had to find against
her on the issue. Id. The Texas Court of Criminal Appeals held the jury instruction was
erroneous because it allowed the jury to return a non-unanimous decision adverse to the
defendant in violation of Article 37.07 of the Texas Code of Criminal Procedure, which “requires
unanimity with respect to the jury’s preliminary vote on sudden passion.” Sanchez, 23 S.W.3d at
33-4. Therefore, we understand Appellant to be arguing for the first time on appeal that the jury
charge did not require the jury’s verdict on his renunciation defense to be unanimously against
him.



            Under both state constitutional and statutory law, a defendant is entitled to a unanimous
verdict in a criminal jury trial. See Tex.Const. art. V, § 13; Tex.Code Crim.Proc.Ann.
art. 37.07, §§ 2(a), 3(c)(Vernon 2006); Sanchez, 23 S.W.3d at 33-4 (finding there must be jury
unanimity with regard to punishment). Here, the jury charge at the punishment phase set out the
punishment range for the offense of criminal solicitation of a minor to commit sexual assault as
confinement in the Institutional Division of the Texas Department of Criminal Justice for two to
ten years and up to a $10,000 fine. The next paragraph stated:
However, in the event you find that the defendant renounced his criminal
objective by withdrawing from his conduct before the criminal objective offense
of Criminal Solicitation of a Minor to Commit Sexual Assault was committed,
and made substantial effort to prevent the commission of the object offense, then
the punishment assessed shall be confinement in a state jail for any term of not
more than two (2) years or less than 180 days, and the jury, in its discretion, may
assess a fine not to exceed $10,000.

The jury charge also stated:
You are further instructed that your verdict must be unanimous and shall
be arrived at by due deliberation and not by drawing lots or any other method of
change, nor shall you add any combination of figures and divide the answer
thereto.

The jury was given five verdict forms, including one form that allowed the jury to assess
punishment at 180 days to 2 days confinement in the State Jail Division of the Texas Department
of Criminal Justice and a fine of $0 to $10,000. Appellant did not raise an objection to the
charge based on lack of jury unanimity. The jury assessed Appellant’s punishment at ten years’
confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine
of $180, but also recommended community supervision.



            Unlike Sanchez, the jurors here were only instructed that if it found in favor of Appellant
on the issue of renunciation, they must assess punishment as confinement in a state jail facility
for 180 days to two years and in their discretion could assess a fine of up to $10,000. The jurors
were not instructed that they were to assess the harsher punishment range in the absence of a
finding in favor of Appellant. The jury charge also contained a general instruction requiring
unanimity of the jury’s verdict. Moreover, the trial court polled the jury and the results indicate
that the jury returned a unanimous verdict, as was also stated by the jury foreman. Finding that,
contrary to Appellant’s contention, the jury charge did require the jury to be unanimous in its
decision to reject Appellant’s renunciation issue, we overrule Issue Four.
            In Issues Five and Seven, Appellant contends the evidence is legally insufficient to
support the jury’s rejection of his affirmative defense of renunciation. In reviewing a legal
sufficiency challenge to the jury’s rejection of an affirmative defense, we first examine all the
evidence that supports the finding, while ignoring all evidence to the contrary. Cover v. State,
913 S.W.2d 611, 619 (Tex.App.--Tyler 1995, pet. ref’d), citing Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989); Cleveland v. State, 177 S.W.3d 374, 387 (Tex.App.--Houston [1st
Dist.] 2005, pet. ref’d); Ballard v. State, 161 S.W.3d 269, 271-72 (Tex.App.--Texarkana, 2005),
aff’d on other grounds by, 193 S.W.3d 916 (Tex.Crim.App. 2006); Howard v. State, 145 S.W.3d
327, 333-34 (Tex.App.--Fort Worth 2004, no pet.), citing Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931, 940 (Tex. 1991). If no evidence supports the negative finding, we examine the
entire record to determine whether it establishes the contrary proposition as a matter of law. 
Cover, 913 S.W.2d at 619; Cleveland, 177 S.W.3d at 387; Howard, 145 S.W.3d at 334, citing
Sterner, 767 S.W.2d at 690.
            As discussed above, the affirmative defense of renunciation is set forth in Section 15.04
of the Texas Penal Code. Renunciation requires an affirmative showing of voluntary repentance
or change of heart. See Thomas v. State, 708 S.W.2d 861, 863 (Tex.Crim.App. 1986); Chennault
v. State, 667 S.W.2d 299, 304 (Tex.App.--Dallas 1984, pet. ref’d). Renunciation is not voluntary
if it results from the influence of other factors. Chennault, 667 S.W.2d at 304; see also
Tex.Pen.Code Ann. § 15.04(c).
            Appellant asserts that no rational juror could have concluded that he did not prove the
elements of his renunciation defense by the preponderance of the evidence, pointing to evidence
that he did not go to Lizzy’s apartment, but rather chose to leave the apartment complex. The
evidence, however, also shows that on at least four separate occasions, Appellant requested and
attempted to induce Lizzy to engage in oral sex and/or sexual intercourse with him, without ever
countermanding those solicitations during their conversations online. On the date of their
arranged meeting, Appellant drove over twenty miles to Lizzy’s apartment complex. In their
online chat, Lizzy had reminded Appellant to bring condoms. When Appellant arrived, he
dropped off his resume at the apartment complex office. Police arrested Appellant as he was
heading back to his vehicle. Appellant claimed that he could not go through with the date and
was heading back to his vehicle to leave. Police officers found a condom under the seat in the
vehicle. In their online chat on the previous day, Appellant told Lizzy that he had just quit his
job at his apartment complex and was looking for a new job “out north to be near my new
sweety,” referring to Lizzy. Appellant told Lizzy that he intended to take a day off to go north
“to some of the good places and drop my resume off” and that he’d “be in [Lizzy’s] area.” From
the evidence, the jury could have reasonably concluded that Appellant’s conduct in dropping off
his resume before the arranged meeting was entirely consistent with his intent that sexual assault
be committed with Lizzy, and thus Appellant failed to show a voluntary repentance or change of
heart. Therefore, the evidence is legally sufficient to support the jury’s finding against Appellant
on the issue of renunciation at the guilt-innocence phase of trial. 
            Appellant testified at the punishment phase of trial and claimed that he fought with
himself for the entire drive to Lizzy’s apartment complex. Appellant stated that he went to the
complex just to “see what was going on at the location,” but once he arrived he did not go
through with it and was going to talk online with Lizzy that night and tell her that he was to old
for her. The jury could have reasonably found Appellant’s testimony to be not credible. 
Therefore, we also conclude that the evidence is legally sufficient to support the jury’s finding
against Appellant on the issue of renunciation as a mitigating factor at the punishment phase of
trial as well. Issues Five and Seven are overruled.
            Accordingly, we affirm the trial court’s judgment.
 
                                                                        DAVID WELLINGTON CHEW, Chief Justice

February 8, 2007

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)