**Louis J. RENAI, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: July 14, 1982.

Decided: Aug. 20, 1982.

John M. Amalfitano (argued), Wilmington, for defendant below, appellant.

Charles M. Oberly, III, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

McNEILLY, Justice:

In this appeal from the Superior Court's denial of post-conviction relief to defendant from his convictions and sentences for Murder First Degree and a weapons offense, we are called upon to reexamine *Harris v. State,* Del.Supr., 293 A.2d 291 (1972) in which this Court approved the test for constitutional incompetency of trial counsel to be: "whether under all the circumstances of the particular case, trial counsel was so incompetent that the accused was not afforded genuine and effective legal representation." A totality of the circumstances test was thus established requiring the Trial Court, in cases where the issue of competence and effectiveness of trial counsel is raised, to hold a post-conviction evidentiary hearing and make specific findings as to each charge of incompetency.

As grounds for his appeal, defendant Louis J. Renai charges that:

"(a) The Public Defender met with the defendant on only one occasion (at most, possibly two occasions) prior to trial for a very short period of time and did not fully discuss the facts of this case with the defendant;

(b) No ballistics investigation was conducted in this case despite the fact [that] a handgun was the alleged murder weapon and [that] there was uncertainty as to the perpetrator of the crime;

(c) No attempt was made to discuss this case prior to trial with any of the State's witnesses (with the exception of the defendant's parents) to determine their probable testimonies and to prepare for cross-examination;

(d) No investigation of the background of the State's witnesses was conducted for possible impeachment purposes;

(e) No research was conducted on the effects of various drugs taken by the defendant on the evening of the alleged murder despite the fact that voluntary intoxication was an issue in the case;

(f) No discussions were had with any drug experts prior to trial regarding the effects of various drugs allegedly taken by the defendant prior to the incident;

(g) No contact was made with a forensic pathologist or chemist for clarification of toxicology issues; [and]

(h) In general, inadequate preparation by defendant's counsel caused a lack of effective presentation of the defendant's case, most notably on the issue of voluntary intoxication, as well as a lack of effective cross-examination of the State's witnesses."

In defendant's Motion for Post Conviction Relief filed by court appointed counsel, it was asserted generally that:

"Defendant was represented on the above charges by the Public Defender's Office. Initially, the Public Defender's Office assigned Richard Allen Paul, Esq. and David Lukoff, Esq. to represent defendant as co-counsel. However, for various reasons not pertinent hereto, Mr. Paul withdrew from the case approximately one month prior to trial and Mr. Lukoff undertook total representation.

As the trial date approached defendant became increasingly concerned about the apparent lack of time or interest being devoted to his case by the Public Defender. Defendant's family shared his concern and on the evening before trial contacted private counsel—James Kipp, Esq.—to represent the defendant.

On the morning of trial, Mr. Kipp requested a continuance to give him time to adequately prepare for trial. A two-day continuance was granted over Mr. Kipp's objection and contention that two days was simply insufficient time to prepare a case as obviously serious and complex as the case at bar.

Defendant was represented at trial by both the Public Defender, Mr. Lukoff, and private counsel, Mr. Kipp."

An evidentiary hearing on defendant's present contentions was held before the Trial Judge at which defendant was represented by another court appointed counsel. In addition to defendant, trial counsel (Kipp and Lukoff) testified, as did Richard Allen Paul, Esquire, the Assistant Public Defender, who was first assigned to the case and who withdrew because of defendant's lack of cooperation. At the completion of the hearing, the Trial Judge made specific findings of fact and ruled against defendant on all points raised. Finally the Trial Judge stated on the record:

"So, in conclusion, I would point out that I don't know of any case where it's been held that there was not genuine and effective representation on the basis of lack of preparation, unless there has been a definite failure to meet the normal standards of preparation, such as cases sometimes where a lawyer doesn't do anything and simply waits for the trial, or cases where it's shown that there was some specific avenue that could have been significant that the lawyer simply missed or didn't fully prepare.

Here we have a case in which there were many sessions between the lawyers and the defendant, including interviews by investigators, transcripts of taped sessions, meeting with the lawyers and the defendant jointly and individually, and we certainly don't have a case where there was simply no preparation or obviously inadequate preparation.

What we have is a case where it is charged that in spite of the preparation, the defense was not genuine and effective, but for the reasons that I've given, there is no specific inadequacy shown.

The only inadequacy that there might have been, and this, I think, is unclear, resulted from the defendant's own conduct. In other words, if he was fully cooperative, which might be another way of saying if he were a different person, it might have been possible to develop the question of extreme emotional distress or drug-induced mental illness more effectively; but any lack of effectiveness in the preparation of those issues, which, I agree with Mr. Paul, are the real issues the facts of the case permit, is not attributable to defense counsel, but to the defendant himself and perhaps, unfortunately, to a lack of cooperation stemming from a lack of confidence or distrust for some reason.

It seems to me that if this case were tried under the best possible circumstances from the defendant's point of view, it would always be a difficult case, at best, from his point of view, and whether there could be a more favorable outcome is very questionable...."

Although this Court in *Harris* did not explicitly delineate guidelines to apply in determining whether counsel's conduct constitutes a constitutional violation, a two-prong test was articulated, *i.e.,* genuine and effective legal representation. The first prong requires a demonstration by defendant that counsel's conduct fell measurably below the conduct expected of reasonably competent criminal defense counsel.

"A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advocate's work, therefore, is not readily capable of later audit like a bookkeeper's. Of course, not all the activity of the advocate has this highly subjective quality. It is possible to examine the sufficiency of his preparation and the adequacy of his knowledge of the relevant law. Review may disclose failures at the trial. All these are matters which will inform the judgment on a retrospective inquiry whether counsel adequately performed his duty. But since what is required is normal and not exceptional representation, there is room for the realization that it would be difficult to find a case where even the ablest and most experienced trial lawyer would be completely satisfied after a searching re-examination of his conduct of a case." *Moore v. United States,* 3d Cir., 432 F.2d 730, 736–37 (1970).

The second prong requires proof of prejudice to a defendant. See *Nettleton v. State,* Del.Supr., 320 A.2d 743 (1974). In *Nettleton,* Chief Justice Herrmann wrote that the transfer of the defendant's case on the day of trial from one Assistant Public Defender to another, absent a showing of prejudice, was not a sufficient ground for a finding of ineffective assistance of counsel and did not violate the defendant's Sixth and Fourteenth Amendment rights.

In *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), the United States Supreme Court, although not called upon to elucidate the standard or analysis to be imposed when a defendant seeks to have his conviction overturned because of his attorney's incompetence, emphasized the need for a showing of demonstrable prejudice or substantial threat thereof in order to sustain a claim of ineffective assistance of counsel and transgression of the protections afforded by the Fifth and Sixth Amendments. See *United States v. Valenzuela-Bernal,* —— U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *United States v. Laura,* 3d Cir., 667 F.2d 365 (1981).

In the instant case the record reveals no basis for defendant's claim of ineffective assistance of counsel either in the preparation or presentation phase. From the outset, defendant was represented by the Public Defender. Initially, Richard Allen Paul, Esquire, was assigned to defendant's case as chief counsel. David Lukoff, Esquire, was assigned as Mr. Paul's assistant. Three days after the murder, defendant was interviewed by an investigator from the Public Defender's office and he gave a detailed statement of what had occurred in the marital apartment the night before the killing, how he, his wife and her paramour had discussed the love triangle, how the three of them drank beer and smoked "killer weed", and, finally how they all went to bed together with defendant's wife lying in the

middle. Defendant also described to the investigator in detail how he had shot his wife the next morning, shortly after his wife's lover had left the apartment.

Mr. Lukoff attended the preliminary hearing, interviewed defendant, and reviewed with defendant the statements he had initially made spontaneously to the police concerning the shooting of his wife. A few days later, Mr. Paul interviewed defendant seeking in particular possible witnesses and personal background. Defendant's parents were interviewed as were the victim's paramour and other witnesses named by defendant. Through discovery process all defendant's statements to the police, ballistic reports and toxicologist reports were obtained. As a result of these interviews Mr. Paul concluded that an extreme emotional defense was plausible. To that end, tests were arranged including psychiatric and psychological interviews. But defendant, after having an EEG and a brief interview with Dr. Voegle, a psychiatrist, refused to proceed with other tests and examinations. At this time, Mr. Paul withdrew from the case and Mr. Lukoff continued to prepare for trial. On the day of trial defendant's parents retained James Kipp, Esquire, to represent defendant. The Trial Judge refused to continue the case but permitted Mr. Kipp to join Mr. Lukoff as defense counsel, excused Mr. Kipp for the two and one-half days required to select a jury, and admonished Mr. Kipp that if any problems arose during trial he should advise the Court. Mr. Kipp advised the Court of no problems until after trial when he raised the issues leading to the ineffective assistance of counsel hearing.

We agree with the Trial Judge that more than adequate preparation and presentation of defendant, Renai's, defense appears in the record and that he cannot now be heard to second-guess or to complain of trial strategy or lack of any preparation of his own making. *Hall v. State,* Del.Supr., 408 A.2d 287 (1979); *Wierzbicki v. State,* Del.Supr., 405 A.2d 692 (1979); *Davis v. State,* Del. Supr., 400 A.2d 292 (1979).

\* \* \*

AFFIRMED.