# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
) Crim. ID. No. 1403019776
v. )
)
) Cr. A. Nos. IN14-04-0727, etc.
)
WILLIAM O. BARKSDALE )

Submitted: January 31, 2020
Decided: April 30, 2020

## MEMORANDUM OPINION AND ORDER

*Upon Defendant, William O. Barksdale's, Motion for Postconviction Relief*,
**DENIED**.

Mark A. Denney, Jr., Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

William O. Barksdale, *pro se*.

**WALLACE, J.**

William O. Barksdale, has filed a motion under Superior Court Criminal Rule 61 seeking postconviction relief in the form of vacatur of his convictions and sentence that resulted from his guilty plea five years ago.[1] The root of Barksdale's complaints is an allegation that trial counsel rendered ineffective assistance by: failing to inform him of or challenge critical State's evidence, failing to recognize the State had insufficient evidence to convict him, and coercing and rushing him into a plea.[2] For the reasons below, Barksdale's motion for postconviction relief is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Barksdale was indicted in July 2014, on 19 felony charges: two counts of Drug Dealing-Heroin; six counts of Possession of a Firearm During the Commission of a Felony; one count of Aggravated Possession of Heroin; one count of Receiving a Stolen Firearm; one count of Possession of a Destructive Weapon; two counts of Conspiracy in the Second Degree; three counts of Possession or Control of a Firearm by a Person Prohibited; and three counts of Possession or Control of Ammunition by a Person Prohibited.[3]

---

[1] Mem. of Law in Support of Postconviction Mot., *State v. William O. Barksdale*, ID No. 1403019776 (Del. Super. Ct. Mar. 31, 2017) (D.I. 63) (hereinafter *"Def.'s Rule 61 Mot."*). The Court has provided Barksdale with plenty of chances to respond to the State's answer and the other materials that have supplemented the Rule 61 record. *See* D.I. 69; D.I. 72; D.I. 73.

[2] *Id.*

[3] D.I. 4. Barksdale was one of seven co-defendants named in the 44-count indictment. *Id.*

The indictment was the result of an almost year-long drug investigation that culminated in the seizure of, *inter alia*, over 300 grams of heroin, three guns, and $20,000 cash.[4] Most of Barksdale's co-defendants pleaded guilty, signed cooperation agreements with the State, and agreed to testify against him.[5] The State also had DNA evidence linking Barksdale to the drugs and the apartment where a large cache of contraband was found.[6] The manager of the apartment complex where the drugs were found was set to testify he saw Barksdale coming out of the target apartment frequently, and the person whose name was on that apartment's lease was going to testify that she was there for only one day and that Barksdale occupied it and paid the rent thereafter.[7] Barksdale, if convicted of all charges, faced a minimum sentence of 122 years in prison.[8]

Because of the complexity of the case and the anticipated length of its trial, the case was specially assigned to and managed through its pretrial proceedings by

---

[4]     Colloquy and Plea Tr., May 5, 2015, at 4-6, 11 (D.I. 48).

[5]     *Id.* at 6.

[6]     *Id.* at 7.

[7]     *Id.* at 8.

[8]     *Id.* at 3-5. Barksdale was also subject to sentencing as a habitual criminal. *See* DEL. CODE ANN. tit. 11, § 4214(a) (2014) (providing that a person who has been thrice previously convicted of a felony and is thereafter convicted of another felony may be declared an habitual criminal offender; the Court may then, in its discretion, impose a sentence of up to life imprisonment for that or any subsequent felony).

the undersigned.[9] The two-week trial was scheduled to begin May 11, 2015; jury selection was to occur the preceding week, on May 6, 2015, with a specially-summoned venire panel.[10]

Barksdale's final case review was conducted on May 4, 2015. He rejected the then-pending plea offer and his counsel filed his proposed supplement *voir dire* questions for jury selection.[11]

The Court conducted a final status conference the next day, May 5, 2015 – the day before jury selection – to address any remaining logistics related to jury selection and trial.[12] Barksdale's trial counsel, Patrick J. Collins, Esquire, outlined the evidence against his client and the State's then-pending plea offer.[13] The plea offer, which was the result of extended negotiations, called for Barksdale to plead guilty to one count of Drug Dealing-Heroin and one count of Possession of a Firearm by a Person Prohibited. The State would enter a *nolle prosequi* on the remaining charges. The State also agreed to forgo prosecution of certain potential charges that had arisen or been discovered during the course of the State's ongoing investigation of

---

[9]     D.I. 8 (Order of Assignment).

[10]     D.I. 12 (Scheduling Memorandum Order).

[11]     D.I. 27 and 28.

[12]     *See* Colloquy and Plea Tr., May 5, 2015, at 2, 20.

[13]     *Id.* at 2-11 (outline of evidence); *id.* at 16-18 (explaining changes in plea agreements offered during plea negotiations and timing of last offer).

Barksdale. Most importantly, the State agreed to charges that called for just a minimum of 12 years of incarceration and to recommend no more than 20 years at the time of sentencing.[14]

At the parties' request, the Court engaged in a colloquy with Barksdale to insure that he understood the terms of the plea agreement offered and the potential risks of rejecting that offer. During that colloquy, Barksdale requested an opportunity to further consider the plea offer and discuss it with his counsel.[15] The Court recessed to allow Barksdale the opportunity to do so.[16]

The status conference resumed later that afternoon when the Court was informed that Barksdale wished to enter a guilty plea; he had executed the plea agreement and the guilty plea form during the recess.[17]

During his guilty plea colloquy, Barksdale confirmed that the plea as outlined by the parties' counsel was correct and that he understood that by entering a plea, he would not go to trial.[18] Barksdale told the Court that it was his choice to plead guilty

---

[14]  *Id.* at 16-18; Plea Agreement and TIS Guilty Plea Form, *State v. William O. Barksdale*, ID No. 1403019776 (Del. Super. Ct. May 5, 2015) (D.I. 29).

[15]  Colloquy and Plea Tr., May 5, 2015, at 15-19.

[16]  *Id.* at 17-19; *id.* at 19-20 (the Court also made arrangements allowing Barksdale to speak with his mother who was present at the proceeding).

[17]  *Id.* at 20-23.

[18]  *Id.* at 25-26.

and to waive his rights associated with a trial.[19] He also acknowledged that he had entered prior guilty pleas and understood what a waiver of trial entailed.[20] Barksdale then pleaded guilty to one count of Drug Dealing-Heroin, pleaded guilty to one count of Possession of a Firearm by a Person Prohibited, and confirmed that he understood the sentencing parameters and enhancements applicable in his case.[21] Barksdale stated that he did commit the acts to which he pled guilty.[22] He assured the Court that he had reviewed the plea paperwork thoroughly with Collins, and he fully understood what was being asked and the answers he was giving.[23] He also verified that he had had enough time to discuss his case with his counsel, that he was satisfied with Collins's representation, and that no one forced him to plead guilty.[24] The Court found that Barksdale entered his plea knowingly, intelligently, and voluntarily, with

---

[19]  *Id.* at 26-27.

[20]  *Id.* at 27-28.

[21]  *Id.* at 30-34.

[22]  *Id.* at 31.

> THE COURT: First of all, are you pleading guilty to both of those charges because you did, in fact, commit the acts that we just discussed?
>
> BARKSDALE: Yes.

[23]  *Id.* at 34-35.

[24]  *Id.* at 36-37.

a full understanding of the plea agreement's charges and consequences. And so, the Court accepted the guilty plea.[25]

Barksdale's first discontent with his guilty plea was exhibited ten days later, when he filed a *pro se* motion and letter seeking to withdraw it.[26] Those filings were referred to Collins.[27] Collins, after consultation with Barksdale (and at Barksdale and of certain of his family members' insistence), filed a Motion to Withdraw Guilty Plea on Barksdale's behalf.[28] Collins also filed a motion to withdraw as counsel; that was granted and new counsel was appointed to represent Barksdale.

After giving both parties an opportunity to supplement their filings and hearing argument, the Court denied Barksdale's Rule 32(d) motion to withdraw his guilty plea.[29] On direct appeal, the Delaware Supreme Court affirmed this Court's

---

[25]    *Id.* at 37-38.

[26]    D.I. 33 (hereinafter *"Def.'s Rule 32(d) Mot."*) and 36 (hereinafter "Def.'s Ltr. to Trial Counsel").

[27]    Super. Ct. Crim. R. 47 ("The court will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense.").

[28]    *See* Super. Ct. Crim. R. 32(d) ("If a motion for withdrawal of a plea of guilty . . . is made before imposition . . . of sentence . . . the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.").

[29]    *State v. Barksdale,* 2015 WL 5676895 (Del. Super. Ct. Sept. 21, 2015).

denial of Barksdale's Rule 32(d) motion, his convictions resulting from his guilty plea, and his sentence.[30]

## II.    APPLICABLE LEGAL STANDARDS

"An effort to withdraw a guilty plea made after sentencing constitutes a collateral attack against the conviction and is subject to the strictures of Rule 61 including several bars of procedural default."[31]

Superior Court Criminal Rule 61(i)(3) provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred[.]"[32]   But the Delaware Supreme Court and this Court have consistently held the 61(i)(3) bar inapplicable to an inmate's "claims [of] ineffective assistance of counsel, which could not have been raised in any direct appeal."[33]   And generally the claim cannot be raised on direct appeal because of "the reviewing Court's need to have before it a complete record

---

[30]    *Barksdale v. State,* 2016 WL 2585892, at \*2-3 (Apr. 6, 2016).

[31]    *Patterson v. State,* 684 A.2d 1234, 1237 (Del. 1996); *Blackwell v. State,* 736 A.2d 971, 972-73 (Del. 1999) ("After sentencing, a motion to withdraw a guilty plea constitutes a collateral attack against the conviction and is subject to the requirements of Rule 61, including its bars of procedural default.").

[32]    SUPER. CT. CRIM. R. 61(i)(3).

[33]    *See, e.g.*, *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994); *State v. Smith*, 2017 WL 2930930, at \*1 (Del. Super. Ct. July 7, 2017).

on the question of counsel's alleged incompetency"[34] which most-oft can only developed via Rule 61's procedures for expanding the record.[35] Because Barksdale's motion is timely filed and raises certain of his ineffective assistance of counsel claims that could not have been raised before his plea and sentencing or on direct appeal, certain of his motion's claims are not procedurally barred by this Court's Rule 61(i)(3).[36]

But Superior Court Criminal Rule 61(i)(4) acts to bar claims previously ruled on during the proceedings that brought about conviction or on direct appeal. Under Rule 61(i)(4), a motion for postconviction relief is barred if "[a]ny ground for relief [ ] was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas

---

[34] *Duross v. State,* 494 A.2d 1265, 1267 (Del. 1985); *Harris v. State,* 293 A.2d 291, 293 (Del. 1972).

[35] *See* SUPER. CT. CRIM. R. 61(g) (procedures for expansion of the record on postconviction); SUPER. CT. CRIM. R. 61(h) (providing postconviction judge discretion to conduct evidentiary hearing).

[36] Barksdale did attempt to raise certain of his ineffectiveness allegations on direct appeal—claims that Collins failed to: (a) file pretrial motions challenging the indictment and charges; (b) enter his appearance for the first case review; (c) present a "[p]ossession is nine tenths of the law" defense; (c) challenge the credibility of Barksdale's co-defendants or obtain supporting evidence from them; (d) file a motion to suppress evidence; (e inform Barksdale of certain evidence and produce evidence against Barksdale to prepare for trial; and (fi) explain the full magnitude of the plea—but the Supreme Court would not consider those claims raised for the first time on direct appeal because they were not presented to this Court in the first instance. *Barksdale v. State,* 2016 WL 2585892, at *2 (Del. Apr. 6, 2016).

corpus proceeding."[37] "Neither federal nor state courts are required to relitigate in postconviction proceedings those claims which have been previously resolved."[38] As explained below, Barksdale's core postconviction claim—his ineffective assistance of counsel claim of a "coerced" guilty plea—which was adjudicated both here under Rule 32(d) prior to Barksdale's sentencing and on direct appeal to the Delaware Supreme Court, falls under Rule 61(i)(4).

## III. DISCUSSION

### A. BARKSDALE'S SPECIFIC INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM SUGGESTING THAT HE WAS COERCED INTO ENTERING HIS GUILTY PLEA IS PROCEDURALLY BARRED HERE.

Barksdale's chief postconviction claim is that he was coerced into taking the plea by his counsel and the State.[39] The State contends that Rule 61(i)(4) procedurally bars this claim because it was formerly adjudicated both here and on direct appeal.[40]

---

[37] SUPER. CT. CRIM. R. 61(i)(4).

[38] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[39] Def.'s Rule 61 Mot., at 3 (entitled "Coercion of Guilty Plea" and summarizing complaints that overlap with others about counsel's alleged performance).

[40] State's Resp. at 6.

Barksdale raised this same claim shortly after he entered his plea.[41] And the Delaware Supreme Court, while leaving for another day his other myriad complaints about counsel, rejected Barksdale's specific claim of a coerced plea on direct appeal.[42]

"Justice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated."[43] This is so even when the restatement is cast as a claim (or part of a claim) of ineffective assistance of counsel.[44] And application of this bar is particularly appropriate when the issue was previously resolved on a motion to withdraw a guilty plea, because

---

[41] Def.'s Rule 32(d) Mot, at 3; Def.'s Ltr. to Trial Counsel, at 2 (D.I. "I have thought about how this plea was presented to me which was hurried and pressured by you and [the prosecutor] which by the way was inadvertently coercing me to sign the plea. . . . You can argue that it was not 'knowingly, willingly, nor intelligently['] in the grounds of being coerce which made my decision Ardous [sic].").

[42] *Barksdale v. State,* 2016 WL 2585892, at *2 ("As he did in the Superior Court, Barksdale argues that his guilty plea was not knowing, intelligent, and voluntary because [Collins] and the State coerced him into pleading guilty. . . . the Superior Court did not err in denying the motion to withdraw.").

[43] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990).

[44] *See Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992) ("Although this Court has not previously addressed Skinner's ineffectiveness of counsel claim, *per se*, our disposition of Skinner's challenge to the absence of a specific jury instruction on the issue of 'restraint' in his direct appeal was, in fact, a substantive resolution of Skinner's present ineffectiveness of counsel claim."); *see also State v. Smith*, 1994 WL 713969, at *2 (Del. Super. Ct. Nov. 15, 1994) ("The Court [ ] notes that although you have couched your ineffective assistance of counsel claim in slightly different terms from your second postconviction motion, '[j]ustice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated.'"), *aff'd*, 751 A.2d 878 (Del. 2000).

-11-

Criminal Rule 32(d) "contemplates a lower threshold of cause [than Rule 61] sufficient to permit withdrawal of a guilty plea."[45]  Thus, if it took far less for Barksdale to carry his burden to prove a coerced plea before sentencing, he is certainly "not entitled to have a court re-examine [that same] issue that has been previously resolved 'simply because the claim is refined or restated'"[46] invoking a rule that employs a far more exacting legal standard.

Unless there is clear and convincing evidence to the contrary, Barksdale is bound by the written and oral representations he made during his acceptance of the guilty plea.[47]  Having engaged Barksdale in open court, and having engaged in a careful review of the plea colloquy and documents supporting Barksdale's guilty plea, this Court found before and the Supreme Court affirmed that he knowingly and voluntarily entered the plea.[48]  There is absolutely nothing developed in the postconviction proceedings that casts any doubt on those prior findings and rulings.

---

[45]     *McNeill v. State,* 2002 WL 31477132, at *1 (Nov. 4, 2002).

[46]     *Id.*

[47]     *Sommerville v. State*, 703 A.2d 629, 632 (Del. 1997).

[48]     *State v. Barksdale,* 2015 WL 5676895, at *4-5; *Barksdale v. State,* 2016 WL 2585892, at *2.

## B. BARKSDALE'S OTHER COMPLAINTS OF INEFFECTIVENESS CLAIM ARE MERITLESS.

But Barksdale goes on to claim not just coercion but numerous other failures by Collins misled him to enter his guilty plea. Barksdales's myriad complaints are best categorized as allegations that Collins failed to inform him of or challenge critical State's evidence and that he failed to recognize the State had insufficient evidence to convict him. So, he says, his guilty plea was the product not of a knowing and intelligent choice, but of Collin's inadequacies in representing him.

An inmate who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[49] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[50]

---

[49]   *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[50]   *See Albury v. State*, 551 A.2d 53, 59 (1988); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

There is always a strong presumption that counsel's representation was reasonable,[51] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial or plea counsel.[52] Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[53] And an inmate must satisfy the proof requirements of both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim, and the Court need not address the other.[54]

Barksdale claims that, in effect, Collins's failed to recognize, explain, and exploit the "insufficiencies" he believes there was in the evidence supporting the State's case.[55] He also faults Collins for not filing a "motion to suppress evidence."[56]

---

[51] *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[52] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[53] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

[54] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[55] Def.'s Rule 61 Mot., at 6.

[56] *Id.* at 2.

Barksdale provides neither support for these assertions nor a cogent explanation as to what may have been missed. A defendant's conclusory allegations of ineffective assistance of counsel do not establish that his counsel's representation was objectively unreasonable.[57] And contrary to Barksdales's contentions, the record demonstrates that Collins communicated with Barskdale regularly and clearly about the evidence he faces and its dire legal consequence for Barksdale.[58] Barksdale obviously thinks more could and should have been done to investigate and exploit what he believes to be fatal weaknesses in the State's case, but those weaknesses are hardly apparent to the Court on this record. "While defense counsel has a general duty to investigate, he has no duty to travel blind alleys in hope they might lead to something helpful to his client's case."[59]

Contrary to Barksdale's contentions, the record demonstrates that Collins certainly considered potential suppression arguments, but did not file a motion to suppress, "because there was no basis to do so."[60] The record further demonstrates that Collins communicated in detail to Barksdale the reasons he concluded so.[61]

---

[57]     *Dawson*, 673 A.2d at 1196.

[58]     Def. Counsel's Aff., Ex. A.

[59]     *State v. Harrell,* 2017 WL 2418278, at *2 (Del. Super. Ct. Jun. 5, 2017), *aff'd*, 2018 WL 1357452 (Del. Mar. 15, 2018).

[60]     Def. Counsel's Aff., at 3.

[61]     Id., Ex. A.

The decision whether or not to pursue any particular legal argument or to file a motion to suppress is a strategic decision and a matter of professional judgment. Such a decision is not deficient representation if it is informed and reasonable.[62] Further, a postconviction movant cannot demonstrate prejudice by defense counsel's failure to press a suppression motion if that attempt were likely to fail.[63]

Collins had a very clear understanding of the State's case when he outlined the evidence, his preparation for trial, and his communication of those to Barksdale during the plea colloquy. And the record as expanded during these postconviction proceedings clearly documents and supports the finding that Collins was anything but ineffective.[64]

Because, in his estimation "the State's case against [ ] Barksdale [was] quite strong," Collins, as required, both prepared for trial and also engaged in active negotiations to obtain the best plea offer he could for his client.[65] Collins provided

---

[62]    *See Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005).

[63]    *See Poteat v. State*, 2007 WL 2309983, at *1 (Del. Aug. 14, 2007); *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008).

[64]    Def. Counsel's Aff., Ex. A (D.I. 68) (documenting Collins's communication with Barksdale and evaluation of his case).

[65]    Colloquy and Plea Tr., May 5, 2015, at 2-9 (counsel's outline of evidence); *id.* at 16-18 (explaining plea negotiations). *See Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012) ("The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.").

the case discovery to Barksdale and the two had fully discussed the evidence, any available defenses and Barksdale's rights.[66] Barksdale confirmed this.[67]

Collins was able to obtain a significant reduction in the sentencing risks for Barksdale; Barksdale was facing a minimum 122 years in prison if convicted and the possibility of incurring multiple life sentences.[68] His plea agreement reduced his exposure to a 12-year minimum, with the State's affirmative agreement to cap its recommendation at 20 years imprisonment.

During his plea colloquy, Barksdale acknowledged that he and Collins fully discussed the case, and that he was satisfied with Collins's representation.[69]

---

[66]     Colloquy and Plea Tr., May 5, 2015, at 9, 25.

[67]     *Id.* at 15-16, 36.

[68]     *See, e.g.,* DEL. CODE ANN. tit. 16, § 4752(1) (drug dealing a Tier 4 quantity is a class B felony); *id.* at § 4752(3) (aggravated possession of a Tier 5 quantity is a class B felony); DEL. CODE ANN. tit. 11, § 1447A (possession of a firearm during commission of a felony is a class B felony); *id.* at § 4205 (the term of incarceration for a class B felony not less than 2 years up and up to 25 years.); *id.* at § 1448 (possession of firearm by a person prohibited carries a minimum sentence of ten years imprisonment if the person has been convicted on two or more separate occasions of any violent felony); *id.* at § 4214(a) (any person sentenced under 11 *Del. C.* § 4214(a) must receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for any fourth or subsequent title 11 violent felony which forms the basis of the State's habitual criminal petition).

[69]     Colloquy and Plea Tr., May 5, 2015, at 36.

> THE COURT: Do you believe that you've had enough time to discuss this case fully with Mr. Collins so you fully understood what you're doing here today?
>
> BARKSDALE: Yes.

Barksdale noted on his Truth in Sentencing form that he was satisfied with Collins's representation and Collins fully advised him of his rights.[70]

## IV.   CONCLUSION

This second review of the guilty plea proceedings, now supplemented by the materials provided during these postconviction proceedings, confirms that Barksdale's decision to plead guilty was knowing, voluntary, and the product of an intelligent decision made with an adequate opportunity to explore all aspects of his case with Collins.[71] There being no clear and convincing contrary evidence, Barksdale is bound by his answers recorded on the guilty plea forms and given during his very detailed plea colloquy.[72]

---

THE COURT: Did you discuss your evidence with him, any defenses you believe you may have had and ask him any questions so that you fully understood the plea that you're entering today?

BARKSDALE: Yes.

THE COURT: Do you believe that he's done all he can reasonably do for you in relation to the charges that you faced?

BARKSDALE: Yes.

THE COURT: Are you satisfied with his representation of you?

BARKSDALE: Yes.

[70]   *See* Def.'s Rule 32(d) Mot., at 4.

[71]   *See* Def. Counsel's Aff., Ex. L (plea hearing transcript), at 7-20.

[72]   *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997); *Smith v. State*, 1996 WL 21050 (Del. Jan. 5, 1996).

There is simply no evidence of substandard representation here. On this basis alone—*i.e.*, failure to show that Collins's performance was in any way deficient—Barksdale's claims seeking vacatur of his guilty plea must be denied.[73] Barksdale has not met his burden of demonstrating that Collins's representation fell below an objective standard of reasonableness or that, but for counsel's errors, he would not have pleaded guilty and instead proceeded to trial. Accordingly, Barksdale's Motion for Postconviction Relief must be **DENIED.**

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*
Paul R. Wallace, Judge

Original to Prothonotary
cc:    William O. Barksdale, *pro se*
       Mark A. Denney, Jr., Esquire
       James K. McCloskey, Esquire
       Patrick J. Collins, Esquire

---

[73]    *Strickland*, 466 U.S. at 687 ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."); *State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011) ("To restate the requirements of *Strickland,* a defendant must establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different. If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).